**Glenn B. HOWELL and Glenda B. Howell, Plaintiffs,**

v.

**W.J. ROBERTS; James Parker; and Clayton County, Defendants.**

Civ. A. No. C85–4515A.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 27, 1987.

Clifford H. Hardwick, Hardwick & Associates, Roswell, Ga., for plaintiffs.

Claude L. Goza, Jr., Glaze & McNally, Jonesboro, Ga., for defendants.

## ORDER

SHOOB, District Judge.

In July, 1985, plaintiffs were arrested and charged with violating a Georgia statute that makes it a misdemeanor for a pawn broker to refuse to allow a duly authorized law enforcement officer to inspect the pawn shop's permanent record book. Plaintiffs brought this action under state law and 42 U.S.C. § 1983, alleging that the arrests contravened their rights under the First, Fourth, Eighth, and Fourteenth Amendments to the Constitution. Presently before the Court are cross-motions for summary judgment. For the reasons stated below, defendants' motion for summary judgment is granted.

### I. *Facts*

Construing the facts in a light most favorable to plaintiffs, the facts are as follows: Glenn Howell ("Glenn") and his brother Sidney operate a pawn shop, Pawn Brokers Bank, in Butts County, Georgia. On July 6, 1985, Glenn was acting as pawn broker. Glenn's father, Glenda Howell ("Glenda"), was visiting in the pawn shop.

W.J. Roberts ("Roberts") was on duty as a police officer for the Clayton County Police Department. He drove to Butts County accompanied by a personal friend who was the victim of a recent theft. The friend was not a police officer. Roberts hoped to find information in Pawn Brokers

Bank that might lead to the recovery of the articles stolen from his friend.

It is the policy of the Clayton County Police Department to allow its officers to go outside the limits of Clayton County to inspect pawn shops and the business records of pawn shops. Clayton County police officers routinely go outside of Clayton County and use the authority of their badges to require pawn brokers to inspect pawn shop records.[1]

In accordance with Clayton County Police Department policy, Roberts entered Pawn Brokers Bank, identified himself as a police officer, and asked Glenn to show him the shop's permanent record book.[2] Glenn refused. Heated words were exchanged. Roberts left the pawn shop and radioed for assistance. The Butts County Sheriff Department sent deputies Michael L. Riley and Kenneth Morgan to the pawn shop.

Glenn produced the records for Deputy Riley. But Glenda, who was seated in an area close to or behind the pawn shop counter, told Glenn that, in his opinion, Glenn did not have to show Roberts anything. Roberts was not allowed to examine the record book.

Plaintiffs state that at this time Roberts appeared angry. He demanded that the Butts County deputies give him plaintiffs' names and the phone number of a local magistrate. He then left the pawn shop and went to the magistrate's office.

Before Magistrate Hugh M. Glidewell, Jr., Roberts executed identical affidavits against Glenn and Glenda as follows:

Failure to Allow Inspection of Pawnbroker's Permanent Record Book in that the said [Glenn/Glenda Boadley Howell], a pawnbroker, did fail to keep open for inspection of Affiant, a duly authorized law enforcement officer, the permanent

record book maintained at Defendant's business known as Pawn Brokers Bank, after being requested to do so during the regular hours of business, all occurring in Butts County, Georgia.

(Affidavits of W.J. Roberts dated July 6, 1985.) On the basis of these affidavits, the magistrate issued warrants for plaintiffs' arrest. The warrants were executed by deputies Riley and Morgan who were accompanied by Roberts. Plaintiffs were arrested and taken to Butts County Jail. They were booked and released on five hundred dollars personal bond the same day.

In August, 1985, the Butts County Grand Jury indicted plaintiffs for the offense of failure to allow inspection of pawn broker's permanent record book. The charges were eventually placed on the court's dead docket by the District Attorney.

## II. Legal Analysis

### A. Summary Judgment Standard

Under Fed.R.Civ.P. 56(c) summary judgment is proper "if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." And, pursuant to the interpretation of the rule by the Supreme Court, summary judgment is not to be treated "as a disfavored procedural shortcut," but instead "as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.Rule Civ.Pro. 1 ...'" *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, entry of summary judgment is mandated after adequate

---

**1.** Defendant James Parker, Chief of Clayton County Police Department, admits that Clayton County officers have gone to Fulton, DeKalb, Douglas, Cobb, and Fayette counties for this purpose.

**2.** O.C.G.A. § 44-12-132 requires every pawnbroker to maintain a permanent record book. The book must contain specific detailed information about each loan, purchase, or sale, such as the

date of the transaction, the name, address, and description of the customer, a description of the item, etc. O.C.G.A. § 44-12-133 further requires that the book "be open to the inspection of any duly authorized law enforcement officer during the ordinary hours of business or at any reasonable time." Failure to allow a duly authorized officer to inspect the book is a misdemeanor under O.C.G.A. § 44-12-137.

time for discovery "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Id.* 106 S.Ct. at 2553.

The two essential elements on which plaintiffs must bear the burden of proof in an action under § 1983 are: (1) conduct carried out under color of state law; and (2) resulting deprivation of rights, privileges, or immunities secured by the Constitution. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). Here, plaintiffs have made a sufficient showing of the first element. They have not, however, demonstrated deprivation of a Constitutional right.

Plaintiffs' complaint presents a Constitutional smorgasbord, alleging violations of First, Fourth, Eighth and Fourteenth Amendment rights. Although the allegations are made with the vigor of righteous indignation, they are not supported by the law. Indeed, the Court wonders whether plaintiffs' attorney researched any Constitutional precedent, or simply dictated his brief extemporaneously. In spite of the apparent lack of supporting authority for plaintiffs' claims, the Court has scrutinized the record and plaintiffs' briefs carefully to determine whether there is more to any of the claims than first meets the eye. Unfortunately for plaintiffs, there is not. At the risk of according plaintiffs' legal arguments more dignity than they merit, the Court will address each claim separately below.

## B. Fourth Amendment Search

Plaintiffs first argue that the statute authorizing a warrantless inspection of pawn shop records violates the Fourth Amendment. The Court disagrees. While searches of commercial property are subject to the strictures of the Fourth Amendment, *See v. City of Seattle,* 387 U.S. 541, 543, 87 S.Ct. 1737, 1739, 18 L.Ed.2d 943 (1967), and non-consensual searches made in the absence of exigent circumstances are generally unreasonable unless authorized by a valid search warrant, *see Marshall v.*

*Barlow's, Inc.,* 436 U.S. 307, 312, 98 S.Ct. 1816, 1820, 56 L.Ed.2d 305 (1978); *Camara v. Municipal Court,* 387 U.S. 523, 528–29, 87 S.Ct. 1727, 1730–31, 18 L.Ed.2d 930 (1967), the inspection at issue here falls into the category of governmental intrusions exempted from the warrant requirement.

In *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), the Supreme Court considered the validity of a federal statute authorizing warrantless inspection of retail liquor stores. The Supreme Court decided that no warrant was required. The Supreme Court reasoned that because the alcoholic beverage industry had historically been "subject to close supervision and inspection," Congress enjoyed "broad power to design such powers of inspection ... as it deems necessary to meet the evils at hand." *Id.* at 76, 90 S.Ct. at 776. Similarly, in *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), the Supreme Court upheld the provision of the Gun Control Act of 1968 that authorized warrantless inspections of federally licensed firearm dealers. In *Biswell* the Supreme Court held the warrantless search reasonable under the Fourth Amendment because of the diminished expectation of privacy in a pervasively regulated business and because of the crucial role the inspections played in federal efforts to prevent violent crime. *Id.* at 315, 92 S.Ct. at 1596.

Recently, the Eleventh Circuit extended the *Biswell-Colonnade* exception to the warrant requirement to a county ordinance that required dealers of second-hand goods to maintain a register of transactions and to make the register available for inspection by county law enforcement authorities. *Peterman v. Coleman,* 764 F.2d 1416 (11th Cir.1985). The Eleventh Circuit found that the ordinance did not violate the Fourth Amendment in permitting warrantless inspection of the transaction register. The intrusion permitted by the ordinance was found to be reasonable in light of the compelling state interest in impeding the sale of stolen goods. *Id.* at 1421.

The Circuit Court's decision in *Peterman* is dispositive in the present case. The Georgia statute requires pawn brokers, like the second-hand dealers in *Peterman*, to maintain a permanent record book containing detailed information about each transaction. The statute also authorizes warrantless inspection of the book.[3] The state interests advanced by the statute—recovery of stolen property, investigation and prevention of theft—are compelling. Further, the inspection provision is central to the crime control purpose of the statute. Inspecting the permanent record book allows law enforcement officers to ascertain quickly whether any stolen property has been sold to or pawned at the shop. The book also provides the officer with identification and descriptive information that could lead to the apprehension of the perpetrator of the theft. The Court concludes that here, as in *Peterman*, the state purpose behind the statute is equally as compelling as the federal interests considered in *Biswell* and *Colonnade*.

The Court also finds that warrantless inspections of the permanent record book pose no threat to any legitimate expectation of privacy. In *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), the Supreme Court stated:

> Certain industries have such a history of government oversight that no reasonable expectation of privacy ... could exist for a proprietor over the stock of such an enterprise. Liquor (*Colonnade*) and firearms (*Biswell*) are industries of this type; when an entrepreneur embarks upon such a business, he has voluntarily chosen to subject himself to a full arsenal of governmental regulation.

*Id.* at 313, 98 S.Ct. at 1821. In Georgia, pawn shops have long been subject to close supervision by the state and by municipalities. *See* O.C.G.A. § 44–12–136; Ga.L. 1868, p. 136 § 1; Code 1873 § 2137; Code 1882, § 2137; Civil Code 1895, §§ 755,

2955; Civil Code 1910, § 904, 3527; Code 1933 § 12–611. An entrepreneur who begins operation of a pawn shop in Georgia knows that his business will be subject to various state and municipal regulations. Further, he knows he must keep a permanent record book. O.C.G.A. § 44–12–132. The law proscribes exactly what information must be kept in the book. O.C.G.A. § 44–12–132. The manner of recording entries and making corrections in the book is explicitly set forth by statute. O.C.G.A. § 44–12–133. The Court concludes that the pawn broker can have no reasonable expectation of privacy in that permanent record book. Therefore, inspection of the book does not intrude on a constitutionally protected privacy interest and does not constitute a Fourth Amendment "search." *See Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Dow Chemical Co. v. United States*, —— U.S. ——, 106 S.Ct. 1819, 90 L.Ed.2d 226 (1986).

■ Plaintiffs argue that the inspection by Roberts was an unreasonable search under the Fourth Amendment because Roberts was employed by Clayton County rather than by Butts County. They argue that, under the Clayton County interpretation of the statute, "any law enforcement officer anywhere in the world would be entitled to come into any pawn shop in Georgia and demand a complete inspection of the pawn shop's books. Under Clayton County's interpretation, a Royal Canadian mounted police officer or even an officer of the Russian K.G.B., since all of these are duly authorized within their jurisdiction, can enforce the Georgia law." (Brief in Support of Plaintiffs' Motion for Summary Judgment at p. 6.) The Court is not, however, presented with a fact situation involving a Canadian Mountie, a K.G.B. agent, or even a police officer from another state. Nor does this case deal with an arrest by a county police officer outside the county limits. Rather, this case involves a police

---

3. O.C.G.A. § 44–12–137 also authorizes inspection of any goods in the pawn broker's possession. Although it is arguable that the statute authorizes a more intrusive search than the ordinance considered in *Peterman*, there is no evidence that a more intrusive search was in fact conducted. The Court addresses only the issue of whether the statute may properly authorize warrantless search of the book that O.C.G.A. § 44–12–132 requires each pawn broker to keep.

officer employed by one county in Georgia carrying on his investigation under the authority of a Georgia statute in a neighboring Georgia county. This fact situation simply does not raise a Constitutional issue. The Fourth Amendment does not contemplate local, intra-state jurisdictional boundaries.[4] Plaintiffs have not cited and the Court is not aware of any authority to the contrary.

Therefore, the Court concludes that inspection of the pawn shop's permanent record book did not violate the Fourth Amendment. Neither Roberts nor Clayton County can be subject to liability on this ground.

### C. Fourth Amendment Seizure

■ Plaintiffs also allege that their arrest constituted an unreasonable seizure under the Fourth Amendment because Roberts swore out false affidavits in order to obtain the arrest warrants. Specifically, they allege that he lied when he stated to the magistrate that he was a "duly authorized" officer. They also allege that Roberts lacked probable cause to believe that Glenda was an agent of the pawn shop. Even if plaintiffs are technically correct on these points, Roberts is entitled to summary judgment on this claim because he is immune from suit under § 1983.

In *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), the Supreme Court reiterated the test for whether an officer is entitled to qualified immunity in a damages action under § 1983. Immunity is contingent on the officer's having an objectively reasonable basis for his belief that the facts alleged in his affidavit are sufficient to establish probable cause. *Id.*, 106 S.Ct. at 1095. But, if officers of reasonable competence could disagree on whether a warrant should issue, immunity is recognized. *Id.* at 1096. The standard,

first enunciated in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), was "designed to 'avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment,'" *Malley*, 106 S.Ct. at 1096.

Here, Roberts clearly had an objectively reasonable basis for each of his statements. The evidence is uncontroverted that Clayton County had an ongoing policy of allowing its officers to inspect pawn shop records in other counties. Roberts was entitled to rely on this policy in stating that he was authorized to make the inspection.[5] The evidence is also uncontroverted that Glenda sat behind or near the pawn shop counter and made statements that would permit a reasonable person to infer that he was in a position of authority there. It is also undisputed that Roberts had no information that would have indicated Glenda was not an agent or employee of the pawn shop. On these facts there is no genuine issue that Roberts had an objectively reasonable basis to believe that probable cause to arrest under O.C.G.A. § 44–12–137 existed. The Court concludes that Roberts is entitled to immunity. Summary judgment is appropriate on the claim under § 1983 for false arrest.

### D. First Amendment Claim

■ Next, plaintiffs argue that the prosecution penalized plaintiffs' exercise of their First Amendment rights. While the institution of criminal prosecution to penalize the exercise of First Amendment rights is actionable under § 1983, *Wilson v. Thompson*, 593 F.2d 1375 (5th Cir.1979), plaintiffs must demonstrate some evidence of retaliatory motive or bad faith. *Id.* at 1382. Here, plaintiffs have failed to establish a genuine issue regarding retaliatory

---

4. The Court does not reach the issue of whether Clayton County's interpretation of "duly authorized" officer violates Georgia law.

5. Plaintiffs may argue that Roberts is not entitled to rely on a policy that allows officers to conduct inspections beyond the boundaries of their county. The Court has concluded above that the policy does not raise a constitutional

issue. Even if the policy is invalid under state law, Roberts is required only to meet the standard of a reasonably well-trained police officer. *Malley*, 106 S.Ct. at 1098. The Court concludes that a well-trained officer in Clayton County would have no reason to believe that he was not a duly authorized officer under O.C.G.A. § 44–12–133.

motive of bad faith. The violation charged was refusal to show an officer the pawn shop record book. Plaintiffs' words of refusal necessarily form the basis for the arrest. It is undisputed that plaintiffs did refuse to show Roberts the book. The Court has already determined that the statute is constitutional and that Roberts had an objectively reasonable basis for determining that he had probable cause to arrest. The mere fact that statements contributed to the finding of probable cause does not create a genuine issue of fact as to whether the arrests were made in retaliation for those statements.[6]

### E. Eighth Amendment Claim

 Plaintiffs have also asserted a claim under the Eighth Amendment to the Constitution. The Eighth Amendment guarantees that excessive bail shall not be required and cruel and unusual punishment is not imposed. Here, plaintiffs were released on a $500 personal bond on the same day that they were arrested. The Court finds no basis for an Eighth Amendment claim on these facts.

### F. Fourteenth Amendment Claims

Finally, plaintiffs have alleged violations of equal protection and procedural due process. Neither of these claims can survive summary judgment.

 It is axiomatic that state law classifications in the area of economics or social welfare need only a rational basis. *Lindsley v. Natural Carbonic Gas. Co.*, 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911). The Court has determined above that the statute at issue in this case bears a substantial relation to compelling state interest. In the Court's view it is not even arguable that the law regulating pawn shops lacks a rational basis. Therefore, plaintiffs' equal protection claim must fail.

 Plaintiffs' due process claim is equally meritless. Plaintiffs argue, without citation to any authority, that "the policy of the Clayton County Police Department is totally contrary to any principles of due process of law and also in violation of the Georgia statute." (Brief in Support of Plaintiffs' Motion for Summary Judgment at p. 6.) As the Court has indicated above, plaintiffs have no Constitutional right to be inspected only by officers employed in Butts County. Further, no due process claim is raised even if the Court assumes that the Clayton County policy violates state law. Due process is not violated simply because a local authority arguably misapplies or exceeds its authority under the relevant state statutes. *Chiplin Enterprises v. City of Lebanon*, 712 F.2d 1524 (1st Cir.1983). Plaintiffs were arrested for violating a valid Georgia statute by Butts County officers who carried valid arrest warrants. The claimed violation of Georgia jurisdictional law raises only a matter of local concern that is properly reviewable in the state courts. *Cf., Friends of Children, Inc. v. Matava*, 766 F.2d 35 (1st Cir.1985).

### G. State Law Claims

Having determined that no federal issue is raised by the present suit, the Court declines to retain jurisdiction over the related state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### III. Conclusion

Defendants' motion for summary judgment is GRANTED as to each of plaintiffs' claims under 42 U.S.C. § 1983. Plaintiffs' state law claims are DISMISSED WITHOUT PREJUDICE.

---

**6.** Plaintiffs argue in their brief that Roberts stated to Gene Wheeler that he would not have arrested plaintiffs if they had not made him angry in front of his friend. Plaintiffs have not pointed to anything in the record evidencing this exchange. Plaintiffs have had ample time to supplement the record and may not now rely on allegations made only in a brief. Fed.R. Civ.P. 56(e). The Court does not concede that if the allegations in the brief are true, a Constitutional issue is raised. The Court merely does not reach the issue.