**SEARS, ROEBUCK DE PUERTO RICO, INC., Plaintiff**

v.

**Pedro SOTO–RIOS, et al., Defendant.**

**Civil No. 94–1633 (PG).**

United States District Court,
D. Puerto Rico.

March 27, 1996.

Rafael J. Vázguez–González, San Juan, P.R., for Plaintiff.

Harry R. Nadal–Arcelay, Fernando J. Fornaris and Victoria D. Pierce, San Juan, P.R., for Defendant.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

Before the Court are cross-motions for summary judgment, and the parties' oppositions thereto. For the reasons stated herein, plaintiff's motion is **DENIED** and defendants' motion is **GRANTED**. Accordingly, this case shall be **DISMISSED**.

### I. Background

#### a. The Worker's Compensation Act

Plaintiff, Sears, Roebuck de Puerto Rico, Inc. ("Sears"), a Delaware corporation, employs approximately 3,500 persons at its Puerto Rico facilities. As such, it is subject to Puerto Rico Worker's Accident Compensation Act, Act No. 45 of April 18, 1935, as amended, codified at 11 L.P.R.A. § 1, et seq. ("the Act"). The Act establishes a comprehensive, compulsory, employer-funded insurance system which covered Sears and its employees during the years relevant to this case. The Act provides an employee injured on the job compensation for medical and rehabilitation expenses without requiring the employee to prove that the employer was at fault. Employers, consequently, receive immunity from suit. 11 L.P.R.A. § 21.

The Act creates a State Insurance Fund Corporation ("the Fund") under the direction of an Administrator ("the Administrator"). Co-defendants Pedro Soto Rios and Alberto Bacó Wantzelius are, respectively, the current and former Administrators of the Fund.

The Fund has also been named as a co-defendant. See 11 L.P.R.A. § 1b–1(d) (authorizing the Fund to sue and be sued in its own name).

The Act requires every covered employer to file no later than July 20 of each year a "declaration" showing the wages paid during the previous fiscal year. A late filing can jeopardize the employer's insured status. 11 L.P.R.A. § 28. The Act authorizes the Administrator to assess premiums for the year following the report period. 11 L.P.R.A. § 26. If the employer does not pay the premium before the end of the relevant semester, the employer is not insured against any accident that occurs during that semester. If the employer pays after the due date established by the Administrator but before the end of the semester, then the employer is only insured for the period after the payment. 11 L.P.R.A. § 28, ¶ 6.

Employers who make the statutorily required payments but who, "for any ... cause," are denied coverage are *not* entitled to rebates of their premium payments. 11 L.P.R.A. § 26, ¶ 10. Uninsured employers are not entitled to statutory immunity, although their employees may still receive compensation from the Fund. 11 L.P.R.A. § 16. In the event that the Fund must pay the medical or other expenses of employees of uncovered employers, the Fund may seek indemnification for such payments from the employer. *Id.* Employers denied coverage may appeal the decision, and are entitled to make their case at hearings whose procedures must "follow[ ], as far as possible, the practice observed in the Superior Court." *Id.*

#### b. Facts of Sears' Complaint

Sears' complaint stems from the Administrator's determination that Sears was uninsured for portions of three consecutive semesters from 1990–1992. The undisputed facts concerning each specific semester of contested coverage are as follows:

*First semester of the 1990–91 Worker's Compensation Year.* Payment for this semester's premium—for coverage from July 1, 1990 through December 31, 1990—was due

on November 30, 1990. Sears alleges that as of October 30, 1990, it had not received an invoice from the Fund. Sears further alleges that for the next six weeks it tried, in vain, to obtain a report from the Fund. Sears tells of unanswered phones, unreturned messages, and of a report by the Fund that it was having difficulty preparing Sears' invoice. Sears did not receive the invoice until December 18, 1990, whereupon Sears made immediate payment. The Fund subsequently declared Sears an uninsured employer for the period from July 1, 1990 until December 18, 1990 on the grounds of the late payment, and, according to Sears, "wrongfully" retained the premium payment.

*First semester of the 1991–92 Worker's Compensation Year.* The declaration for this semester was due on July 22, 1991. Sears avers that the declaration arrived on-time at a post-office box established by the Fund. The Fund did not process the declaration, however, until July 24, 1991. The Fund subsequently declared Sears uninsured for the period up to the date on which Sears paid its premium, November 13, 1991, despite the fact that Sears made the payment before it was due. Thus, Sears was uninsured from July 1, 1991 until November 13, 1991.

*Second semester of the 1991–92 Worker's Compensation Year.* The payment for this semester was due on April 6, 1992. Sears mailed it via registered mail on April 3, 1992. The stamp indicating receipt by the Fund's post office box shows that the payment was made available to the Fund on April 6, 1992. The Fund, however, did not process Sears' payment until April 7, 1992, and, therefore, declared Sears uninsured for the entire semester.

Thus, to summarize, Sears alleges that the Fund made it constructively impossible for Sears to make its first semester 1990–91 payment, and that the Fund capriciously denied Sears coverage as a result of the Fund's own administrative ineptitude. As for the following two semesters, Sears alleges that the Fund illegally denied it coverage, because receipt by the Fund's post-office box constitutes timely delivery (for both premium payments and declarations). The Fund con-

tests Sears' characterization, asserting that Sears simply failed to comply with the terms of the Act, and was therefore appropriately denied coverage.

#### c. Legal Grounds of Sears' Claim

Based on the above, Sears brought the instant 42 U.S.C. § 1983 complaint, alleging that the Fund's conduct violated no less than four separate constitutional provisions: the right to both procedural and substantive due process (Fifth and Fourteenth Amendments); the Fifth Amendment's "Takings" clause; as well as the Eighth Amendment's prohibition against excessive fines. As relief, Sears seeks the invalidation of 11 L.P.R.A. §§ 26 and 28, both facially and/or as applied; equitable relief in the form of a declaration of Sears' insured status for all time periods in question; compensatory damages; and reasonable attorneys fees and costs.

Neither Sears nor the Fund contests the Court's jurisdiction over this matter, which is premised on 28 U.S.C. § 1331 (federal question jurisdiction) and § 1342 (federal jurisdiction over actions seeking enforcement of constitutional rights under 42 U.S.C. § 1983). Declaratory relief is authorized under 28 U.S.C. §§ 2201 and 2202. Venue is proper in this District under the criteria set forth in 28 U.S.C. § 1391.

Both Sears and the Fund have filed motions for summary judgment. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

### II. Discussion

#### a. The "Takings" and "Excessive Fines" Claims

Sears' "Takings" and "Excessive Fines" arguments can be disposed of quickly. The controlling and dispositive case is *In re Pan American Paper Mills, Inc.,* 618 F.2d 159 (1st Cir.1980), a case that remains good law, and that Sears failed to address or attempt to distinguish. *Pan American* in-

volved a tax priority claim made by Puerto Rico's Worker's Compensation Insurance Fund in a bankruptcy proceeding. The debtor-appellant (Pan American itself), failed to make its worker's compensation premium payments for the years 1972–1976, amounting to an outstanding obligation of $68,000. The Fund paid out approximately $50,000 in medical and other expenses to Pan American's employees during this period. As a creditor in the bankruptcy proceeding, the Fund sought priority treatment under the Bankruptcy Act—which gives priority to tax liens—for both the unpaid premiums and the expenses incurred.

Pan American argued that the Fund's claim should not be given priority on the grounds that Puerto Rico Worker's Compensation payments—at least in the context at issue—should not be construed as a tax. Pan American's argument was similar to that made by Sears here: because they received no coverage as a result of the non-payment, the premium owed to the Fund should not be construed as a tax lien.

The Court rejected the argument. Quoting the Supreme Court, the First Circuit defined taxes as "those pecuniary obligations laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it." *Id.* at 162 (quoting *New Jersey v. Anderson*, 203 U.S. 483, 491, 27 S.Ct. 137, 139–140, 51 L.Ed. 284 (1906)). The Court found that employer payments under Puerto Rico's Workers Compensation scheme qualified as a tax because "they are pecuniary obligations imposed by the government for the purpose of defraying the expenses of an undertaking which it authorized." *Id.*

Furthermore, the Court expressly rejected the argument that retention of the payment without providing insurance protection in any way constituted a penalty:

> In determining whether the premiums were "taxes" ... it is of no consequence that had Pan American been prompt in paying the premiums it would have had as a *quid pro quo* insurance protection; nor is it of any consequence that since the corporation failed to make prompt payment it

had no insurance protection. Pan American is not, except in a colloquial and inexact sense, punished in any way because of its delay. Pan American is merely failing to get a benefit that it would have enjoyed had it paid its premiums promptly.

*Id.*

In the instant case, application of *Pan American* requires that both Sears' eighth amendment "excessive fines" and fifth amendment "takings" arguments must fail. Since the premium payment is a legitimate tax, it cannot be a takings, nor can it be a fine.

### b. Sears' Procedural Due Process Claim

The Court previously noted that the Act requires the Administrator of the Fund to provide employers who are denied coverage a hearing "following, as far as possible, the practice observed in the Superior Court." 11 L.P.R.A. § 16. Such was apparently not done in this case. Consequently, Sears claims a violation of procedural due process.

■ For procedural due process purposes, a protected property interest in statutory benefits arises when state law creates a "legitimate claim of entitlement" to the benefits. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Sears asserts that it has a property interest in receiving coverage and indemnification under Puerto Rico's worker's compensation scheme. Sears further argues that the Fund denied it coverage for the semesters in question without providing constitutionally adequate procedural safeguards.

■ Assuming, *arguendo*, that the Fund's actions deprived Sears of a cognizable property interest, Sears' complaint, as supplemented by its motion for summary judgment, is nonetheless inadequate. The Supreme Court has explained the critical importance attached to the requirement that a procedural due process claimant allege the unavailability of constitutionally-adequate remedies under state law:

> In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or

property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.* The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

*Zinermon v. Burch,* 494 U.S. 113, 125–26, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990) (emphasis in original) (citations and footnote omitted).

■ *Zinermon* does not require that a § 1983 claimant exhaust administrative or state judicial remedies. *See Patsy v. Florida Bd. of Regents,* 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982). It does mean, however, that parties must, at a minimum, substantiate why such remedies *would be* inadequate were they pursued. *See Rumford Pharmacy v. City of East Providence,* 970 F.2d 996, 999 (1st Cir.1992). As the First Circuit observed in this regard:

> If the federal courts were to entertain civil rights complaints based on procedural deprivations for which adequate state remedies exist, every disgruntled applicant could move its procedural grievances into the federal courts, any meaningful separation between federal and state jurisdiction would cease to hold and forum shopping would become the order of the day.

*Id.* (internal citation and punctuation omitted).

■ Sears' motion for summary judgment fails to substantiate that available remedies under Puerto Rico law were inadequate to redress any deprivation resulting from the Fund's denial of its worker's compensation coverage. Sears merely *alleges* their inade-

quacy. For support, Sears cites case law, rather than explaining and documenting the deficiencies of the process available to it. The case Sears cites is *Construction Aggregates Corp. v. Rivera de Vicenty,* 573 F.2d 86, 95 (1st Cir.1978) (finding "the Industrial Commission does not provide an adequate remedy for those employers who wish to contest an exaction by the State Insurance Fund on federal grounds").

Putting *Construction Aggregates* aside for the moment, it is important to bear in mind that motions for summary judgment must be decided based on *evidence* in the record. *See* Fed.R.Civ.P. 56(c), above. Citation to a 20-year old case along with unsupported allegations are insufficient to carry a motion for summary judgment.

Furthermore—its age notwithstanding—it is clear that *Construction Aggregates* is not solid support. At the time the case was decided, the only remedy the Fund's Administrator was authorized to give for erroneous exactions was credit against future obligations. Such a credit, the *Construction Aggregates* Court observed, "will hardly compensate a company ... that is no longer doing business in Puerto Rico," as was the circumstance in the case. *Construction Aggregates,* 573 F.2d at 95. Thus, *Construction Aggregates* is inapplicable, since there is no indication that Sears is planning to close its doors in Puerto Rico any time soon.

Although the procedures the Fund provides for employers with complaints, such as those Sears makes in this case, may, indeed, be inadequate, they are surely not so for the reasons at issue in *Construction Aggregates.* Therefore, because Sears has failed to provide any supporting evidence for its position, its motion for summary judgment on the procedural due process issue must be denied. Furthermore, because Sears has the burden to prove the violation, the Fund's motion shall be granted.[1]

### c. *Substantive Due Process Claim*

■ Sears argues that the Fund's arbitrary and capricious disposition of its premi-

---

1. Because Sears' claim fails for what amounts to a pleading deficiency, the claim shall be dismissed without prejudice.

um payments and declarations violated its substantive due process rights. Although substantive due process claims are normally reserved for questions regarding an "individual's freedom of choice with respect to certain basic matters of procreation, marriage and family life," *Harrah Ind. Sch. Dist. v. Martin,* 440 U.S. 194, 198, 99 S.Ct. 1062, 1064, 59 L.Ed.2d 248 (1979), some claims may, nonetheless, "fall within the protection from arbitrary governmental action afforded by the Due Process Clause." *Flemming v. Nestor,* 363 U.S. 603, 610–11, 80 S.Ct. 1367, 1372–73, 4 L.Ed.2d 1435 (1960).

A plaintiff alleging a constitutional violation of substantive due process has a difficult burden.[2] The constitutionality of government conduct is presumed and shall be affirmed so long as it is rationally related to the achievement of a legitimate government objective. *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 730, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601 (1984). Substantive due process claims are disfavored because they put the court in the awkward position of evaluating the permissibility of a democratically accountable government's conduct without the existence of clear standards for doing so. *Amsden v. Moran,* 904 F.2d 748, 753–54 (1st Cir.1990). Conceding the lack of clear standards for substantive due process claims, the First Circuit has nonetheless articulated the following approach: "[B]efore a constitutional infringement occurs, state action must *in and of itself* be egregiously unacceptable, outrageous, or conscience-shocking." *Id.* at 754 (emphasis in original).

Thus, "a regulatory board does not transgress constitutional due process requirements merely by making decisions 'for erroneous reasons' or by making 'demands which arguably exceed its authority under the relevant state statutes.'" *Amsden,* 904 F.2d at 757, quoting *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 832 n. 9 (1st Cir.1982). Even bad-faith violations of state law are not necessarily tantamount to unconstitutional deprivations of due process. *Id.,* citing *Chongris v. Board of Appeals,* 811 F.2d 36, 40 (1st Cir.1987).

The essence of Sears' complaint is that on two separate occasions the State Insurance Fund failed to open its mail in a timely manner, and that on the third occasion in question the Fund made it impossible for Sears to file a timely payment. The consequences of the Fund's conduct for Sears have been substantial: Sears lost insured status and is therefore subject to law-suits from its injured employees; it must reimburse the Fund for any expenses made on behalf of Sears' employees; and, to add insult to injury, Sears lost the full value of its premium payments.

From the Court's perspective, it appears that the Fund has comported itself badly, and perhaps even illegally.[3] However, its conduct does not make out a constitutional violation. A survey of the First Circuit's substantive due process cases explains why.

---

**2.** Sears failed to cite, nor has the Court discovered, a single case from any court in which the conduct of the sort complained of here was found to violate substantive due process.

**3.** The Fund devoted a significant portion of its brief to arguing that its conduct was in accord with the Act. Its argument depended in large part on the Puerto Rico Supreme Court's decision in *Atlantic Pipe Corp. v. Fondo del Seguro del Estado,* 93 JTS 40 (1993). Although the Fund may be correct that its conduct was legal, *Atlantic Pipe* does not provide support for its position.

The question in *Atlantic Pipe* was simply whether the law means what it says when it conditions insured status on the Fund's timely receipt of the premium payment. The Atlantic Pipe corporation mailed its payment for the first semester of the 1987–88 insurance year on October 20, 1987. The payment was due on October 21, but did not arrive until October 22. *Id.* at 10526. The Court held that the Fund rightly declared the corporation uninsured for the period from July 1—October 22, 1987. *Id.* at 10527.

The question here, however, is whether delivery and acknowledged receipt by the Fund's post-office box on the date due constitutes *receipt by the Fund.* The Fund argues that the payment is not "received" until it "has been filed in the office of the [Administrator] of the State Fund," 11 L.P.R.A. § 28, ¶ 6. Although the Court has not researched Puerto Rico law on the issue, it is difficult to believe that the Fund's argument could be correct. The implication is that the Fund could permit mail to pile up, thereby rendering uninsured all those whose payments did not arrive before the Administrator last picked up his mail.

In *Creative Environments,* for example, plaintiff, a developer, alleged that its proposal had been improperly rejected by the local planning board through an arbitrary misapplication of state law. *Creative Environments,* 680 F.2d at 831. Nonetheless, the First Circuit held that the complaint did not allege a constitutional violation even if defendants had in fact misapplied state law. Likewise, in *Chiplin Enterprises, Inc. v. City of Lebanon,* 712 F.2d 1524, 1528 n. 6 (1st Cir. 1983), the Court rejected a constitutional claim based on "arbitrary and malicious official action." Plaintiff alleged it had met all legal requirements for a building permit but that the town "maliciously den[ied] it a building permit for invalid and illegal reasons and in bad faith." *Id.* at 1526. The Court affirmed a summary disposition by the district court, ruling that a "mere bad faith refusal to follow state law in such local administrative matters simply does not amount to a deprivation of due process *where the state courts are available to correct the error.*" *Id.* at 1528. *See also, Amsden,* 904 F.2d at 757–58; *Cloutier v. Town of Epping,* 714 F.2d 1184, 1189 and 1191 n. 5 (1st Cir.1983); *Roy v. City of Augusta,* 712 F.2d 1517, 1523 (1st Cir.1983).

The same considerations are present here. Sears claims that the Fund, acting under the color of Puerto Rico law, violated the letter and spirit of the Act by denying Sears coverage. However, the alleged violation, "in and of itself," fails to state a constitutional claim. *Amsden,* 904 F.2d at 754. The government's conduct, no matter how Kafkaesque, is not "shocking," nor does it "violate universal standards of decency." *Id.* at 757 (citation omitted). Furthermore, Sears has failed to allege the insufficiency of Puerto Rico administrative or judicial remedies. Therefore, the Fund's motion for summary judgment shall be granted.

### III. Conclusion

Based on the foregoing considerations, defendants' motion for summary judgment (**Dkt. # 6**) is **GRANTED.** Plaintiff's cross-motion for summary judgment is, therefore, **DENIED.** Plaintiff's claim for damages under the eighth amendment, "takings," and substantive due process theories shall be **DISMISSED WITH PREJUDICE.** Plaintiff's procedural due process claim shall be **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**