**Louis E. MATNEY, Plaintiff**

v.

**CITY OF NORTH ADAMS** Jennifer Makcey Ethier, Treasurer, Vincent Lively, Building Inspector, Michael Sarkis, Director of Services Board of Health, Defendants

**No. CIV.A. 03–30262–MAP.**

United States District Court, D. Massachusetts.

March 21, 2005.

---

William J. Pudlo, Springfield, MA, for Louis E. Matney, Plaintiff.

Nancy Frankel Pelletier, Robinson Donovan, PC, Springfield, MA, for North Adams, City of, Jennifer Makcey Ethier, Michael Sarkis, Vincent Lively, Defendants.

*MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTION TO DISMISS* (Docket No. 9)

PONSOR, District Judge.

## I. INTRODUCTION

Plaintiff Charles Matney has brought this action against four defendants: the City of North Adams ("City"); Jennifer Makcey Ethier, City Treasurer; Vincent Lively, City Building Inspector, and Michael Sarkis, Director of Services for the City Board of Health. Plaintiff contends, in essence, that the actions of the defendants have constituted a concerted effort to interfere with his possession, use and enjoyment of property owned by him at 117 River St. in North Adams, Massachusetts. The complaint includes three counts: breach of contract, abuse of process, and violations of both state and federal civil rights statutes.

The defendants have moved to dismiss all counts for failure to state a claim upon which relief may be granted. This memorandum will address in substance only the portion of Count III that alleges a violation of 42 U.S.C. § 1983, since this claim is the only component of plaintiff's complaint that supports exercise of jurisdiction by this federal court. As will be seen below, viewing the facts as generously as possible

to the plaintiff, the alleged actions taken by the defendants simply do not rise to the level of a violation of § 1983. Moreover, the three individual defendants named in the complaint are protected by the doctrine of qualified immunity against any claim under this statute.

The elimination of any foundation for federal jurisdiction gives this court discretion to dismiss the complaint's remaining state law claims without prejudice to their re-filing in state court. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726–727, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Dismissal without prejudice of the state law claims is especially appropriate in this case, where the First Circuit has repeatedly held that local real estate disputes of this sort are more properly reserved for state administrative and judicial processes, and where a pending appeal of a Massachusetts Land Court decision appears to raise all, or nearly all, the issues presented in this federal lawsuit.

## II. FACTUAL BACKGROUND.

In considering a motion to dismiss, the court, of course, must accept as true the facts alleged within the four corners of the complaint to determine whether they set forth any possible claim pursuant to the federal civil rights statute. Although some of the complaint's allegations are difficult to follow, the essential facts necessary to consider defendants' motion emerge with sufficient clarity.

In 1968, the plaintiff purchased a parcel of land located at 117 Riverdale Street in the City of North Adams, Berkshire County, Massachusetts. By 1988 health problems began to compromise the plaintiff's ability to work, his income diminished, and as a result he fell behind on his payments of the real estate taxes. According to the complaint, in 1991, because of the plaintiff's failure to keep current, "the premises

were taken for taxes by the City, resulting in the City obtaining a tax title." Complaint at ¶ 12.

Despite the City having "taken" the property, the plaintiff maintained an interest in it and continued making some periodic payments towards his current and back taxes. By 1998, however, a dispute apparently arose about the amount of taxes owed, in that "there was still an amount claimed by the City for delinquent real estate taxes in excess of $10,000, which the Plaintiff disputed." Complaint at ¶ 16.

Because of this dispute, "the City thereafter made another tax taking and threatened foreclosure of the Plaintiff's equity of redemption." Complaint at ¶ 17. Apparently in response to these threats, in April of 1998, the plaintiff filed a petition for bankruptcy, in which the City filed a claim for $16,000 in back real estate taxes. According to the complaint, the bankruptcy court eventually found that the City of North Adams was entitled to $5,090.66 on its claim.

Subsequently, according to the plaintiff, the City came to an agreement with plaintiff "whereby the plaintiff would make payments to the City of $400 each month towards the tax arrears and would further keep his real estate taxes current, and, the Plaintiff would voluntarily dismiss his bankruptcy proceedings." Complaint at ¶ 21. According to the complaint, if plaintiff did these things, the City agreed that "no further action would be taken to collect taxes." Complaint at ¶ 22.

Between August 25, 1999 and May of 2000, plaintiff, as per the agreement, made payments of $400 a month to the City. However, in May of 2000, "Plaintiff was advised by the Treasurer/Tax Collector's office that certain portions of his payments were being applied to the old 'tax title' account and not to the current amount agreed." Complaint at ¶ 27. It is a little hard to know for certain what this means, but it is clear that plaintiff took the position that the City's action was "a breach of the agreement made in the bankruptcy proceedings and stopped his regular payments." Complaint at ¶ 28.

In 2001, apparently as a result of the cessation of payments, the City commenced proceedings in Land Court "to foreclose the Plaintiff's equity of redemption" and prevailed. Complaint at ¶ 29. Plaintiff has appealed the Land Court judgment, but he nevertheless contends that "the actions of the City place a cloud upon the Plaintiff's title." Complaint at ¶ 31. The City, plaintiff says, has failed to abide by the agreement entered into during the Bankruptcy proceedings and has engaged in a "wrongful commencement" of the action in Land Court.

The complaint also contains allegations that over the years City officials have taken various retaliatory actions against the plaintiff, including: refusing (due to his tax delinquency) to renew plaintiff's license to run a take-out restaurant called "Lou's Hot Dog Heaven"; citing plaintiff for displaying a sign improperly under the local zoning codes; demanding that he remove debris from his property that was in fact the responsibility of an adjacent owner; refusing to enforce the health code against this adjacent owner, and wrongfully forbidding the plaintiff from burning leaves and wood on his property.

### III. DISCUSSION

#### A. Claim against the City of North Adams

Although 42 U.S.C. § 1983 does not create substantive rights, it does provide a vehicle by which individuals may bring claims for violations of rights secured by the Constitution. To demonstrate a violation of § 1983, the plaintiff must establish

both that the act complained of was carried out under color of state law and also that this conduct deprived him of rights, privileges, or immunities secured by the laws or Constitution of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

■ While there is no dispute that the defendants here acted under color of state law, the facts as set forth in the complaint do not demonstrate that action taken by the City violated any right of the plaintiff protected by the Constitution or laws of the United States. In reaching this conclusion, the court does not intend to offer any opinion, one way or the other, as to the validity of the plaintiff's complaints regarding the defendant's alleged breach of its agreement with him or its violation of zoning ordinances or special permit procedures. These, however, are matters that can be, and in fact are being, handled through competent state administrative and judicial procedures.

In Count III the plaintiff offers two theories by which the defendants' alleged course of conduct violated his federal civil rights. First, the defendants' actions constituted "a custom and practice of singling out the Plaintiff for retaliation as a result of his opposition to the Land Court proceedings to divest him of his title to the premises...." Complaint at ¶ 71. Second, "[t]he continued actions of the Defendants in seeking health and building code enforcement actions against the Plaintiff constitute a custom or practice of individualized retaliation." Complaint at ¶ 72.

Neither of these theories can withstand the force of controlling First Circuit law. The Court of Appeals has repeatedly held that land usage controversies between a plaintiff and a state or local administrative and political entities do not rise to the level of due process violations, absent evidence of "fundamental procedural irregularity,

racial animus, or the like." *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 831 (1st Cir.1982). Indeed, even a "bad faith refusal to follow state law in such local administrative matters simply does not amount to a deprivation of due process where the state courts are available to correct the error." *Chiplin Enterprises, Inc. v. City of Lebanon,* 712 F.2d 1524, 1528 (1st Cir.1983).

Here, even assuming that the actions of the City officials somehow amounted to an abuse of power (an allegation that is hotly contested by the defendants) or violated some state regulation, ordinance or statute, there is no basis to find that these actions rose to the level of due process violations. Obviously, no allegation is offered of race-based or other discriminatory animus. Moreover, despite plaintiff's manifest, and perhaps justified, indignation at the outcome of his various contests with the City, no allegation of any fundamental procedural irregularity is offered. On the contrary, the complaint itself concedes that the City proceeded against the plaintiff in a proper court of law, the Land Court, that the Land Court judge found in favor of the City, and that the matter now rests before a competent appellate forum.

As a practical matter, if federal judges were to thrust themselves into these kinds of constantly recurring local land use disputes, then every zoning decision and every dispute about the application of a local ordinance would be tried in federal court. As a matter of constitutional law, disputes of this kind simply do not present due process issues of sufficient stature to invoke the Fourteenth Amendment or 42 U.S.C. § 1983.

*B. Claims against Individual Defendants*

■ Even if there were a viable claim against the City, the defendants Ethier,

Lively, and Sarkis would be entitled to dismissal based on qualified immunity. The Supreme Court has made it clear that "government official[s] performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Here, the defendants could not have reasonably known that their actions violated plaintiff's constitutional right to the use and enjoyment of his land. No authority would have alerted them to the possibility of such a violation on their part. Indeed, with regard to one of the plaintiff's most prominent claims, the Land Court, in 2001, actually entered judgment in favor of the City of North Adams. In that proceeding, plaintiff had the opportunity to offer the same facts and arguments that he is advancing here, and he failed to persuade the state court of any impropriety. Under these circumstances, it would be a flat violation of *Harlow* to require these defendants to defend against a claim of a federal civil rights violation.[1]

## IV.  CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss with regard to that portion of Count III advancing a claim pursuant to 42 U.S.C. § 1983 is hereby ALLOWED. That segment of the plaintiff's complaint is dismissed with prejudice. The Motion to Dismiss is also hereby ALLOWED as to the balance of the complaint, but without prejudice to the plaintiff re-filing these claims in state

court should he wish. The case may now be closed.

It is So Ordered.

---

1.  More fundamentally, no reasonable official could have known that any of the actions specified in the plaintiff's complaint constituted a violation of the plaintiff's civil rights, because, as it happens, none of these actions *was* a violation of any constitutional right.