# United States Court of Appeals
## For the First Circuit

No. 03-1917

DIVA'S INC. d/b/a DIVAS;
DIANE CORMIER, formerly known as DIANE CORMIER-YOUNGS,

Plaintiffs, Appellants,

v.

CITY OF BANGOR; MICHAEL R. CROWLEY, Bangor City Council;
NICHI FARNHAM, Bangor City Council;
FRANK FARRINGTON, Bangor City Council;
GERRY G.M. PALMER, Bangor City Council;
JOHN ROHMAN, Mayor of Bangor;
JUDITH VARDAMIS, Bangor City Council,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Torruella, Circuit Judge,
Stahl, Senior Circuit Judge,
and Oberdorfer,* Senior Circuit Judge,

Jeffrey M. Silverstein, with whom Billings & Silverstein, was on brief for appellant.
Mark V. Franco, with whom Thompson & Bowie, LLP, was on brief for appellees.

June 9, 2005

* Of the District of the District of Columbia, sitting by designation.

**STAHL**, **Senior Circuit Judge**. This case is part of a lengthy dispute between Plaintiff-Appellant Diva's, Inc. ("Diva's"), an adult entertainment bar located in Bangor, Maine, Plaintiff-Appellant Dianne Cormier-Youngs, the owner of Diva's, and Appellee City of Bangor, Maine. Also involved in the instant action are various Bangor government officials in their official and individual capacities (collectively, "Individual Appellees"). We decide today an appeal from two district court orders which together dismissed all of Appellants' claims, affirming in part and reversing and remanding in part.

## I.  STATUTORY BACKGROUND

There are several ordinances and statutes involved in this dispute. The first is Bangor City Code ("Bangor Code") Chapter 228 on Public Morals. Chapter 228 contains a provision that regulates the location of commercial establishments offering nude dancing. See Bangor Code § 228-14. That section provides that establishments offering nude entertainment can only be located in certain zoned districts, and that operators of a commercial establishment offering nude entertainment must obtain a certificate of occupancy, which will not be granted if the establishment is located within 500 feet of a litany of establishments including: another nude entertainment establishment, an establishment licensed to sell alcohol, a church, school, public park, public library, or residentially-zoned district.[1] Diva's cannot obtain a certificate

_____

[1]  "Nude entertainment" is defined in the Bangor Code as "Any display of live persons in a state of nudity, or in a visible state

-2-

of occupancy without a variance as it is located within 500 feet of a church.[2] Chapter 228 also regulates the operation of nude establishments by prohibiting such establishments from serving alcohol. See Bangor Code § 228-15(c).

The second provision of the Bangor Code at issue here applies to establishments that sell alcohol in conjunction with the provision of non-nude entertainment. See Bangor Code Chapter 61. A liquor licensee desiring to have live entertainment, that is, dancing or music performed by something other than a mechanical device, must apply for a special amusement permit pursuant to Article II of Chapter 61 of the Bangor Code.[3] Although an applicant may properly seek a special amusement permit for "dancing," the dancing cannot be "nude entertainment," as defined

---

of sexual excitement whether or not clothed." Bangor Code § 228-13(B). The Bangor Code defines "Nudity" as "The showing of the human male or female genitals, pubic area or buttocks or the female breast below the top of the nipple . . . ." Bangor Code § 228-2. The Bangor Code section regulating the conduct of commercial establishments offering nude entertainment further provides that "Nude entertainment presented in a commercial establishment shall not include any showing of the male or female genitals, pubic area, perineum or anus of any person with less than a fully opaque covering." Bangor Code § 228-15(G).

[2]Although both parties discuss the zoning problem as arising because Diva's is next door to a church, the record indicates that Diva's is also located in the "Downtown District," which is not one of the permitted zones for nude entertainment, and apparently is also located within 500 feet of a residentially-zoned district and an establishment that sells alcohol.

[3]Bangor Code section 61-17 provides: "No licensee for the sale of liquor to be consumed on his or her licenses premises shall permit on such licensed premises . . . any music, except a radio or mechanical device, any dancing or entertainment of any sort unless the licensee shall have first obtained a special amusement permit approved by the City Council."

by Bangor Code Chapter 228.  This means, in essence, that female dancers in an establishment that serves alcohol must, in addition to not violating the provisions of Chapter 228, have their buttocks and the areola area of their breasts covered with an opaque covering.[4]

With this background in mind, we turn to the history of Diva's.

---

[4]Bangor Code section 61-17(c) provides:

C.  Live entertainment regulated.
    (1) No licensee shall permit entertainment on the licensed premises . . . when the entertainment involves:
        (a) The performance of acts or simulated acts of sexual intercourse, masturbation, sodomy, beastiality [sic], oral copulation, flagellation or any sexual acts which are prohibited by law.*
        (b) The actual or simulated touching, caressing or fondling on the breasts, buttocks, anus or genitals.*
        (c) The actual or simulated displaying of the genitals, pubic hair, buttocks, anus or any portion of the female breasts at or below the areola area thereof.
        (d) The permitting by any licensee of any person to remain in or upon the licensed premises who exposes to any public view any portion of his or her genitals or anus.
    (2) For the purposes of this subsection, the term "displaying" or "expose" shall mean unclothed or uncostumed and not covered by a fully opaque material.
*It appears that nude dancing establishments operating with a certificate of occupancy issued pursuant to Section 228-14 are also prohibited from offering entertainment involving these acts.  See Bangor Code §§ 228-2, 228-15(F).

## II. FACTUAL BACKGROUND[5]

Diva's opened as nude dancing establishment and juice bar in 1996. In 1999, Bangor amended Chapter 228 of the Bangor Code to add, <u>inter alia</u>, the provision prohibiting nude entertainment establishments from being located within 500 feet of a church. Because Diva's is located next to a church, it is unable to obtain a certificate of occupancy without being granted a variance.[6] Diva's challenged the ordinance in the Maine Superior Court and lost. Diva's appealed the Superior Court decision, but entered into a settlement agreement ("settlement agreement") before the appeal was decided. In the settlement agreement, the City of Bangor gave Diva's the right to continue to operate as a nude dancing establishment, essentially in violation of the new Section 228-14, until May 31, 2001. In return, Diva's agreed to withdraw the appeal, cease nude dancing on its premises on or before May 31, 2001, and to never challenge the constitutionality or validity of Bangor Code Chapter 228 as written at the time of the settlement in any forum.

In anticipation of the May 31, 2001 deadline, Diva's began the process of converting into a "bikini lounge"; that is, an establishment that would serve alcohol in conjunction with bikini-

---

[5]The Appellants devote approximately one, double-spaced page in their Opening Brief to their "Statement of Facts." Thus, we are forced to glean the pertinent facts from the complaint, the district court's orders of dismissals, and the Appellees' Brief.

[6]Neither party discusses whether the revised Chapter 228 contained a grandfather clause that might have applied to Diva's.

clad dancing.[7]  Diva's applied for a liquor license and special amusement permit which would allow it to provide live dancing and musical entertainment in conjunction with the provision of alcohol.

On May 30, 2001, as part of the permitting process, the City Council of Bangor ("City Council") held a public hearing. Although the City Council approved the permit for the liquor license, it denied the special amusement permit.  As entitled by statute, Diva's requested a written explanation of the reasoning for the denial of the special amusement permit, and the City Council responded by stating in writing that it was concerned that the "bikini lounge" would soon revert back to a nude dancing establishment in violation of Sections 228-14 and 61-17 of the Bangor Code, and that granting the permit would negatively affect public health, safety and welfare.

In response, Diva's and Cormier-Youngs appealed the decision of the City Council to the Bangor Board of Appeals and filed a federal lawsuit against the City of Bangor in the United States District Court for the District of Maine ("federal district court").  On June 20, 2001, the Bangor Board of Appeals reversed the decision of the City Council and on June 21, 2001, issued an

---

[7]There was an issue during the permitting process as to what is considered a "bikini."  Although the generic term "bikini" may imply that a "G-string-type" bottom qualifies as a "bikini," there appears to be a consensus on the part of both parties on appeal that a "bikini" is an article of clothing that covers the entire buttock area, and the portion of the female breasts at or below the areola area.

order granting the special amusement permit for the "bikini lounge."[8]

One day later, on June 22, 2001, Diva's and Cormier-Youngs invited the public to witness an "act of civil disobedience." When the invitees arrived, they observed the Diva's dancers performing in "pasties" and "G-string" underwear, in violation of Bangor Code Section 61-17 for liquor licensees because the dancers exposed their buttocks.

The City of Bangor responded by filing a civil enforcement action against Diva's in the State of Maine District Court ("state district court") for violating Bangor Code Sections 228-14 and 61-17. Diva's moved to dismiss, arguing, inter alia, that Bangor Code Sections 228 and 61-17 as written violated the First and Fourteenth Amendments to the Federal Constitution. On August 29, 2001, the Maine District Court denied Diva's motion.

Diva's and Cormier-Youngs subsequently were permitted to amend their federal complaint ("amended complaint") to include as defendants the Mayor of Bangor and the City Council members who voted against granting Diva's a special amusement permit. The amended complaint also asserted: (1) a facial challenge to the constitutionality of Bangor Code Section 61-17 and several claims

_____

[8]In making this decision, the Bangor Board of Appeals was required to find that the City Council had acted "arbitrarily and capriciously" in its denial of the permit. See Bangor Code § 61-24 ("The Board of Appeals may grant or reinstate the permit only if it finds that the denial, imposition of restrictions or revocation or suspension was arbitrary or capricious.").

under 42 U.S.C. § 1983 (collectively, "Count One")[9]; (2) a state law breach of contract claim alleging that the City of Bangor had violated the 1999 settlement agreement by denying the special amusement permit ("Count Two"); (3) a claim alleging tortious interference with Diva's and Cormier-Youngs' ability to contract with "talent, support staff and vendors" ("Count Three"); (4) a claim that Appellees had conspired to violate Diva's and Cormier-Youngs' constitutional rights in violation of 42 U.S.C. § 1985 ("Count Four"); and (5) an intentional infliction of emotional distress claim on behalf of Cormier-Youngs individually ("Count Five").  The claims requested monetary, declarative, punitive and injunctive relief.

---

[9]"Count One" provides, in relevant part:
"3.   That the Bangor Code sec. 61-17 as written violates the plaintiffs right of free expression under the 1st Amendment to the U.S. Constitution.
 4.   That the Bangor Code sec. 61-17 as written violates the plaintiffs' substantive due process rights under the 14th Amendment.
 5.   That the Bangor Code is unconstitutionally vague. . . .
13.   That the defendant, under color and guise of Maine State law, unjustifiably[,] unreasonably, and intentionally refused to issue a special amusement permit in violation of the plaintiffs' 14th amendment substantive and procedural due process right under the U.S. Constitution.
14.   That the defendant under color and guise of Maine State law arbitrarily and capriciously denied the issuance of a special amusement permit to the plaintiff in violation of the plaintiffs['] 1st Amendment Rights to Freedom of Speech. . . .
16.   That the defendant's ordinances are an unlawful prior restraint on Free Speech in violation of the 1st Amendment of the U.S. Constitution."

And, although not explicitly stated in the amended complaint, the district court interpreted Appellants' Section 1983 claim as being against the Individual Appellees in both their official and individual capacities.

-8-

The City of Bangor and the Individual Appellees moved to dismiss, and, while the motion to dismiss was pending in federal court, trial was held on October 5, 2001 in the state court civil enforcement action against Diva's. The state district court decided in favor of the City of Bangor, and Diva's appealed the decision to the Supreme Judicial Court of Maine. On December 20, 2001, the federal district court dismissed Diva's and Cormier-Youngs' claims contained in Counts Two (breach of contract), Three (tortious interference), Four (Section 1985 conspiracy), and Five (intentional infliction of emotional distress). The district court also dismissed Appellants' Section 1983 claims contained in Count One against the Individual Appellees in their individual capacities, and determined that Cormier-Youngs lacked standing to pursue individually the Section 1983 claim portion of Count One. This left only Diva's and Cormier-Young's facial challenge to Bangor Code Section 61-17 and Diva's Section 1983 claim against the City of Bangor and the Individual Appellees in their official capacities.

As to Diva's and Cormier-Youngs' challenge to the facial constitutionality of Bangor Code Section 61-17, the federal district court raised the issue of Younger[10] abstention sua sponte, and concluded that principles of comity dictate that it should abstain from deciding the facial constitutionality of the Bangor Code Section 61-17 because there was an ongoing state proceeding against Diva's to enforce that provision. The court also found

---

[10]Younger v. Harris, 401 U.S. 37 (1971).

that comity dictated that it refrain from deciding whether Diva's had given up the right to challenge the facial constitutionality of the Bangor Code provisions by signing the settlement agreement.[11] The court then dismissed the facial challenge portion of Count One.

As to Diva's Section 1983 challenge portion of Count One against the City of Bangor and the Individual Appellees in their official capacities, the federal district court issued a stay pending the Maine Supreme Judicial Court's decision in the state court enforcement proceeding.

On April 15, 2003, the Maine Supreme Judicial Court issued its decision in the enforcement action upholding the constitutionality of Bangor Code Sections 228-14 and 61-17, and finding Diva's liable for violation of those provisions. See City of Bangor v. Diva's, Inc., 830 A.2d 898 (Me. 2003). On April 21, 2003, the federal district court issued an order requesting the parties to file a "short written submission" discussing the effects of the state court decision on the remaining claim--Diva's Section 1983 challenge against the City of Bangor and the Individual Appellees in their official capacities. The City of Bangor and the Individual Appellees filed a submission, but Diva's declined to do so.

---

[11]We note that, at times, both parties and the district court refer to the Appellants' claims in federal court as related or against the "Bangor code provisions" in the plural, implying that the Appellants are challenging both Bangor Code Sections 228-14 and 61-17. We note, however, that the amended complaint only references Bangor Code Section 61-17, and thus our analysis is confined as such.

On June 3, 2003, the federal district court dismissed the remaining portion of Count One. In ruling on that motion, the federal district court stated that "Plaintiff's federal free speech claim can succeed 'only to the extent that the state court wrongly decided the issues before it,'" and "[t]he Rooker-Feldman doctrine[12] prohibits district courts from ruling on federal claims where the ruling would effectively defeat or negate a state judgment to which the federal claimant was a party." The federal district court went on to state that "Diva's had ample opportunity to pursue its Fourteenth Amendment objection to the licensing procedures before the state court," and because it did not present its claims in the state court proceeding, the Rooker-Feldman doctrine also precludes federal court review.

Judgment entered in favor of Appellees on June 9, 2003, and Diva's and Cormier-Youngs filed this timely appeal of both the December 20, 2001 and June 3, 2003 orders of dismissal.

## II. ANALYSIS

We engage in plenary review of the district court's allowance of a motion to dismiss, accepting all well-pleaded facts as true and making all reasonable inferences in favor of the Appellants. Rockwell v. Cape Cod Hosp., 26 F.3d 254, 255 (1st Cir. 1994). We begin our review with the district court's order of dismissal dated December 20, 2001, leaving that order's discussion of Count One for last, and then conclude with our review of the

---

[12]See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).

-11-

dismissal of the remainder of Count One as contained in the June 3, 2003 order.

**A.          Count Two:  Breach of Contract**

The substance of the Appellants' breach of contract claim is that it was a breach of the settlement agreement for the City of Bangor to deny Diva's application for a special amusement permit-- that is, that the Appellees breached their "obligation not to frustrate, retard, or disallow the plaintiff's ability to practice her art form, consistent with the terms of the agreement."  On appeal, the Appellants raise only a procedural challenge to the district court's order of dismissal:  they argue that the district court improperly dismissed their breach of contract claim because the second amended complaint pled all the elements necessary to state a claim for breach of contract and that the court "transcended the applicable scope of review" when it considered the settlement document in rendering its decision on the motion to dismiss.  The Appellants are incorrect.

The City of Bangor attached a copy of the settlement agreement to its motion to dismiss.  And, although "[o]rdinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment," Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001), "[u]nder First Circuit precedent, when 'a complaint's factual allegations are expressly linked to--and admittedly dependent upon--a document (the authenticity of which is not

-12-

challenged),' then the court can review it upon a motion to dismiss."  Id. at 34 (quoting Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998)).  Here, the Appellants' claim that the Appellees breached the settlement agreement is dependent on the scope of the settlement agreement, and thus, that document was properly considered by the district court.  Furthermore, the settlement agreement provides only that the City of Bangor would permit Diva's to operate as a nude entertainment establishment until May 31, 2001, in violation of the amended Bangor Code Section 228.  There is nothing in the settlement agreement that explicitly or implicitly  creates a contract between the parties with regards to a special amusement permit.  The Appellants have failed to state claim for breach of contract.

B.        Counts Three and Five:  State Tort Claims

Appellants next challenge the dismissal of the two state tort claims against the City of Bangor and the Individual Appellees:  Count Three alleging tortious interference with Diva's and Cormier-Youngs' contracts with "talent, support staff and vendors"; and Count Five, alleging, on behalf of Cormier-Youngs only, intentional infliction of emotional distress.  We do not address the substance of either claim, however, because the district court correctly determined that all of the Appellees enjoy immunity under the Maine Tort Claims Act.  See 14 M.R.S.A. §§ 8104-B(2), 8111(1)(B).  The Maine Tort Claims Act provides statutorily created absolute immunity for the City of Bangor and Individual Appellees from suit for claims "which result[] from . . .

-13-

[u]ndertaking or failing to undertake any judicial or quasi-judicial act, including, but not limited to, the granting . . . or refusal to grant . . . [a] permit." Id. The district court's dismissal of the state tort claims is affirmed.

**C.        Count Four:  Violation of 42 U.S.C. § 1985**

Appellants next allege that Appellees conspired to violate their First and Fourteenth Amendment constitutional rights in violation of 42 U.S.C. § 1985(3).  Section 1985(3) creates a private cause of action "for injuries occasioned when 'two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'"  Burns v. State Police Ass'n of Mass., 230 F.3d 8, 12 n.3 (1st Cir. 2000) (quoting 42 U.S.C. § 1985(3)).  In Griffin v. Breckenridge, 403 U.S. 88 (1971), the Supreme Court clarified that in order to state a claim under Section 1985(3), the plaintiff must, among other requirements, allege that the "conspiratorial conduct of which he complains is propelled by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (quoting Griffin, 403 U.S. at 102).

The district court, in dismissing Appellants' Section 1985(3) claim, found that "Plaintiffs fail to state class-based animus on the part of Defendants, and indeed, the Court does not perceive any class into which the Plaintiffs might fall."  The district court went on to find that even if it were to assume,

-14-

_arguendo_, that "Plaintiffs had claimed that they belonged to a class of purveyors of adult entertainment for 1985(3) purposes, that class would be fatally indeterminate in that it is, at best, a 'vague and amorphous' grouping of individuals." On appeal, Appellants do not advance the argument that their class is one of purveyors of adult entertainment, and therefore we deem that argument waived. _See_ _Van Haaren_ v. _State Farm Mut. Auto. Ins. Co._, 989 F.2d 1, 7 n.6 (1st Cir. 1993) ([A]rguments neither presented to the district court nor presented in appellant's opening brief on appeal [are] deem[ed] waived."). Instead, Appellants state in their Opening Brief that:

> the complaint alleges that Ms. Cormier is a woman. Women are a protected class of persons under § 1985(3). Because the Court is obliged to draw all reasonable inferences in favor of the Plaintiffs and against the Defendants, the Court erred in finding that the Plaintiff fatally excluded reference to a protectable class.

(Citation omitted.) In support of this argument against dismissal, Appellants cite to paragraph 25 of their amended complaint, which states that:

> the Plaintiff enjoys a right to free speech and expression in the presentation and performance of _her_ art form of semi-nude dancing recognized under the First Amendment to the United States Constitution, and _Erie_ v. _Pap's A.M., TBDA "KANDYLAND,"_ 529 U.S. 277 (2000).

(Emphasis added.) We presume that it is Appellant Cormier-Youngs' contention that by using the feminine possessive pronoun "her" in paragraph 25 of the amended complaint, she has alleged that the state class-based animus she has suffered is a result of her being

-15-

a member of the class of "women" in general.[13]   We find this argument unpersuasive.

First, even under the most liberal of pleading standards, using a possessive pronoun that signals that the Appellant Cormier-Youngs is a woman is insufficient to set forth an allegation that she suffered class-based animus because she belongs to the class of women.  Second, Appellant has failed to allege in her complaint any facts that the Individual Appellees conspired against her <u>because</u> she was a woman (as opposed to her being, for example, a purveyor of nude entertainment, regardless of her gender).  Appellants have failed to state a claim under Section 1985(3).

**D.        Count One:  Section 1983 and Facial Challenge**

As previously mentioned, the district court construed the Appellants' "Count One" as being comprised of two separate counts: a Section 1983 claim and a challenge to the facial constitutionality of Section 61-17 of the Bangor Code.  In its December 20, 2001 order, the district court addressed first whether Count One of the complaint stated a claim under Section 1983 against the Individual Appellees in their individual capacities, and concluded in the negative.  The district court next addressed whether Appellant Cormier-Youngs had standing in her personal capacity to pursue a claim against the City of Bangor and the Individual Appellees in their official capacities, and similarly concluded in the negative.  This left only Diva's Section 1983

_____

[13]We also presume that Diva's has waived any argument that it belongs to a protected class, as it alleges none.

claim against the City of Bangor and the Individual Appellees in their official capacities and its facial challenge to the constitutionality of the Bangor Code Section 61-17.

The district court then raised the issue of <u>Younger</u> abstention <u>sua sponte</u> and dismissed the facial challenge to the Bangor Code under principles of comity.[14]  As to the remaining claim, Diva's Section 1983 claim attacking the propriety of the City Council's denial of its permit application, the district court, in its December 20, 2001 order, raised the issue of <u>Colorado River</u> abstention <u>sua sponte</u>,[15] and stayed its decision of that claim pending the outcome of the state enforcement action.  The Appellants do not challenge on appeal the district court's decision to abstain from deciding the Section 1983 claim until after the state court decision, and make no mention of the district court's decision to exercise <u>Younger</u> abstention and dismiss the facial challenge to Section 61-17.  Thus, we review <u>de novo</u> the district

---

[14]<u>See</u> <u>Younger</u> v. <u>Harris</u>, 401 U.S. 37, 53-54 (1971) (holding that abstention was required where a plaintiff, who was defending criminal charges in state court, sought to have the federal court enjoin the ongoing state criminal proceedings).  The principles behind <u>Younger</u> abstention are "grounded in notions of comity:  the idea that the state courts should not, in certain circumstances, be interfered with," <u>Rio Grande Cmty Health Ctr., Inc.</u> v. <u>Rullan</u>, 397 F.3d 56, 68-69 (1st Cir. 2005), and the doctrine has been expanded into the civil context.  <u>See</u> <u>Maymó-Meléndez</u> v. <u>Álvarez-Ramírez</u>, 364 F.3d, 27, 31 (1st Cir. 2004).

[15]<u>See</u> <u>Col. River Water Conservation Distr.</u> v. <u>United States</u>, 424 U.S. 800, 817 (1976) (holding that in "extraordinary circumstances," it may be appropriate for a federal court to abstain from exercising jurisdiction over an issue that is the subject of a parallel state proceeding, for purposes of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.") (quotation omitted).

-17-

court's December 20, 2001 decision to (1) dismiss the claims against the Individual Appellants in their individual capacities; (2) dismiss Cormier-Youngs as a plaintiff for lack of standing; and its June 3, 2003 decision to (3) dismiss the remaining Section 1983 claims under the Rooker-Feldman doctrine. We treat as waived any challenges Appellants may have to the district court's (1) dismissal of the facial challenge to Section 61-17 under principles of Younger abstention and (2) the district court's decision to stay its decision on the Section 1983 claim until the Maine Supreme Judicial Court decided the City of Bangor's enforcement action against Diva's. See, e.g., Smilow v. Southwestern Bell Mobile Sys., Inc., 323 F.3d 32, 43 (1st Cir. 2003) ("Issues raised on appeal in a perfunctory manner (or not at all) are waived.").

1.        Individual Appellees in their Individual Capacities

The district court found that the Individual Appellees enjoyed both absolute and qualified immunity for their actions during the permitting process. The district court's justification for finding absolute immunity was that the City Council members had acted in both a quasi-judicial and legislative capacity. We agree that the officials enjoy absolute immunity from personal liability because they were acting in a quasi-judicial capacity when they denied the special amusement permit, and thus, we do not need to determine whether the officials are qualifiedly immune for their actions or whether they are absolutely immune because their actions were also legislative in nature.

We must take a "functional approach" to determining whether the City Council members are absolutely immune from suit for their denial of the special amusement permit. See Desetek Group, Inc. v. State of N.H. Pub. Util. Comm'n, 318 F.3d 32, 40-41. (1st Cir. 2003). And, even though the City Council members "at various times may perform legislative, executive and judicial functions, each of which may entitle the official to a different level of immunity, the functional approach to immunity requires that actions taken in the performance of a particular function are to be accorded the level of immunity appropriate to that function." Bettencourt v. Bd. of Registration, 904 F.2d 772, 782 (1st Cir. 1990) (citing Scott v. Cent. Me. Power Co., 709 F. Supp. 1176, 1187 (D. Me. 1989)) (emphasis in Scott).

In Bettencourt, 904 F.2d at 783, we described the analysis for determining whether an official has engaged in a quasi-judicial act:

> Proper analysis involves answering three questions, each designed to determine how closely analogous the adjudicatory experience of a Board member is to that of a judge. First, does a Board member, like a judge, perform a traditional "adjudicatory" function, in that he decides facts, applies law, and otherwise resolves disputes on the merits (free from direct political influence)? Second, does a Board member, like a judge, decide cases sufficiently controversial that, in the absence of absolute immunity, he would be subject to numerous damages actions? Third, does a Board member, like a judge, adjudicate disputes against a backdrop of multiple safeguards designed to protect [the complaining party's] rights?

Here, first, the Council members performed an "adjudicatory" function when they reviewed and voted on Diva's special amusement permit: they held a hearing, heard testimony, asked questions,

-19-

discussed the matter, made their decision, and then provided a written explanation of their reasoning. Second, the act of denying a special amusement permit can be controversial, and can prompt litigation, as it did in this case. Without the proper protection from personal liability, it would be extremely difficult to get people to serve as City Council members. Cf. Bogan v. Scott-Harris, 523 U.S. 44, 52 (1998) ("[T]he threat of liability may significantly deter service in local government, where prestige and pecuniary rewards may pale in comparison to the threat of civil liability."). Lastly, there are procedural safeguards that operate to protect a special amusement permit applicant from the violation of its constitutional rights. Indeed, this case presents a perfect example: Diva's exercised its statutory right to (1) request a written explanation of the reasons justifying the Council's denial of the special amusement permit, see Bangor Code § 61-21, and (2) appeal the decision to the Bangor Board of Appeals, see Bangor Code § 61-24. As a result of the appeal, the faulty decision of the City Council was reversed, and Diva's received its special amusement permit. The process worked. And, if Diva's had lost its appeal to the Bangor Board of Appeals, it had recourse to the Maine state courts, see Bangor Code § 23-3H.

To the extent that the Appellants' amended complaint raises a claim against the Individual Appellees in their individual capacities, the district court was correct to grant their motion to dismiss, because the City Council members are absolutely immune in

-20-

their personal capacities from a suit arising from their denial of the special amusement permit.

2.        <u>Corimer-Youngs' Lack of Standing</u>

The district court next dismissed Cormier-Youngs as a plaintiff in the remaining Section 1983 claims.  "Article III of the Constitution confines the federal courts to deciding actual cases and controversies."  <u>Cotter</u> v. <u>City of Boston</u>, 323 F.3d 160, 166 (1st Cir. 2003).  In order to establish Article III standing, a plaintiff must have a "personal stake in the outcome of the controversy."  <u>Baker</u> v. <u>Carr</u>, 369 U.S. 186, 204 (1962).  And, "[a]ctions to enforce corporate rights or redress injuries to [a] corporation cannot be maintained by a stockholder in his own name . . . even though the injury to the corporation may incidentally result in the depreciation or destruction of the value of the stock."  <u>Pignato</u> v. <u>Dein Host, Inc.</u>, 835 F.2d 402, 406 (1st Cir. 1987) (quoting <u>Brictson</u> v. <u>Woodrough</u>, 164 F.2d 107, 109 (8th Cir. 1947)).  This standing rule applies even when there is only one shareholder in a corporation.  <u>See</u> <u>id.</u>  And, although we have not yet had the opportunity to explicitly state, we join the circuits who have already addressed the issue to hold that this standing requirement also applies to actions brought to redress injuries to a corporation under Section 1983.  <u>See</u> <u>Potthoff</u> v. <u>Morin</u>, 245 F.3d 710, 717 (8th Cir. 2001) (holding that the shareholder standing rule applies to civil rights actions brought pursuant to § 1983);  <u>Flynn</u> v. <u>Merrick</u>, 881 F.2d 446, 450 (7th Cir. 1989) (holding that "filing suit under § 1983 does not diminish the requirement that

the shareholder suffer some individual, direct injury."); Gregory v. Mitchell, 634 F.2d 199, 202 (5th Cir. 1981) (extending shareholder standing rule to civil rights actions under § 1983); Erlich v. Glasner, 418 F.2d 226, 228 (9th Cir. 1969) (finding "nothing in the Civil Rights Act" which would permit a plaintiff-stockholder to circumvent the rule that "even though a stockholder owns all, or practically all, of the stock in a corporation, such a fact of itself does not authorize him to sue as an individual").

Here, Appellant Cormier-Youngs does not allege any injury, separate from the injury to Diva's, resulting from her claim that the Appellees violated Section 1983 when they acted under color of state law to deny Diva's the special amusement permit in violation of the First and Fourteenth Amendments. As the district court correctly determined, once it dismissed all but the Section 1983 claim of the second amended complaint, Appellant Cormier-Youngs no longer had Article III standing. We affirm the dismissal of Cormier-Youngs as a plaintiff in the remaining Section 1983 claim.

3.      Section 1983 Claims

After the Maine Supreme Judicial Court rendered its decision, the federal district court requested submissions on the effect of the decision on the pending federal case, and then dismissed the remaining Section 1983 claim under the Rooker-Feldman doctrine. The federal district court held that the Rooker-Feldman doctrine prevented it from ruling on Diva's federal claim because

-22-

a decision in favor of Diva's would "effectively defeat or negate a state judgment to which the federal claimant was a party."

After this court heard argument and took this case under advisement, the Supreme Court decided Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 125 S. Ct. 1517 (2005). In Exxon Mobil, the Supreme Court cautioned that the Rooker-Feldman doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 1521-22. And, the Court held that "neither Rooker nor Feldman supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains sub judice in a federal court." Id. at 1527.

The Rooker-Feldman doctrine does not apply in this case because Diva's filed its case in federal court before the enforcement action was filed against it in state court. And, Diva's was not seeking an "appeal" of a state court judgment in federal district court, but instead was, among other things, seeking redress for the City Council's arbitrary and capricious denial of the special amusement permit for impermissible reasons. Thus, it was an error for the district court to invoke the Rooker-Feldman doctrine to dismiss Appellant Diva's remaining Section 1983 claim.

-23-

Our inquiry does not end, however, with the determination that the federal district court erroneously invoked the Rooker-Feldman doctrine, as we may uphold the dismissal on any ground supported by the record. See Wilson v. Town of Mendon, 294 F.3d 1, 10 n.23 (1st Cir. 2002). In our review of whether there is an alternate ground to support the dismissal, we find our jurisprudence on damages resulting from delays caused by the improper denial of building permits instructive. In Chiplin Enters. v. City of Lebanon, 712 F.2d 1524, 1526-28 (1st Cir. 1983), we held that a building developer who had to wait five years between the denial of a building permit and the determination that the permit had been improperly denied, could not state a Section 1983 claim for deprivation of either substantive or procedural due process. Taking all facts alleged as true, even though the plaintiff "had met all legal requirements for the permit" and "the town had no valid reason to reject the application" and that defendants "maliciously den[ied] [plaintiff] a building permit for invalid and illegal reasons and in bad faith," we held that the plaintiff could not state a valid Section 1983 claim. Id. at 1526. We found that even though the conduct complained of was concededly carried out under the color of state law, the plaintiff could not "identify a constitutional right of which [he] ha[d] been denied." Id. at 1527. This is because "property is not denied without due process simply because a local planning board rejects a proposed development for erroneous reasons or makes demands which arguably

-24-

exceed its authority under the relevant state statutes." Creative Env'ts, Inc. v. Estabrook, 680 F.2d 822, 832 n.9 (1st Cir. 1981).

But, although an erroneous denial of a permit for the use of property does not amount to a denial of due process, it may, in certain circumstances, "give rise to genuine constitutional issues." Chiplin, 712 F.2d at 1527. In Packish v. McMurtrie, 697 F.2d 23, 25-26 (1st Cir. 1983), we held that a firefighter who had initially been denied reimbursement for medical expenses, allegedly in retaliation for his published criticism of town officials, and who sought damages for the delay in receiving the reimbursement, could not state a claim for denial of due process, but "might have viable claims if [he] could in fact demonstrate that [he] was denied indemnification in retaliation" for his exercise of his First Amendment rights. Similarly, in Manego v. Cape Cod Five Cents Sav. Bank, 692 F.2d 174, 177 (1st Cir. 1982), we found that the plaintiff had stated a claim under Section 1983 because he alleged that the reason for the denial of an entertainment license was based on race--even though this was a claim the plaintiff ultimately could not prove. Furthermore, in Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 40 (1st Cir. 1992), we considered "whether the denial of a land use permit in unjustifiable retaliation for the applicant's expressions of his political views is a First Amendment violation," and found, at least with respect to one of the plaintiff's claims, that summary judgment was inappropriate because plaintiff had "stated a prima

-25-

facie case of denial in retaliation for his political expressions." Id. at 41.

Here, even though Bangor Code Section 61-17 has been determined by the Maine Supreme Judicial Court to be constitutional on its face, and, even though Diva's cannot state a claim for a violation of procedural or substantive due process, we believe that Diva's has stated a claim that the City of Bangor and the Individual Appellees in their official capacities acted under color of state law to deprive Diva's of its First Amendment right to freedom of speech. We caution, however, that the First Amendment right that is implicated here is not the right for Diva's to allow nude dancers on its premises,[16] but for Diva's right, if any, to offer dancing that is consistent with the type of dancing permitted under Section 61-17. We also caution that if the district court on remand determines that the City Council did act arbitrarily and capriciously with the intent of depriving Diva's of its First Amendment right to free speech, the only available damages are those incurred by Appellant Diva's during the three week period from when the City Council denied the permit, to when the Bangor Board of Appeals reversed that decision and granted the permit. We

---

[16]The Maine Supreme Judicial Court has upheld the constitutionality of Section 228-14 as a valid time, place, and manner restriction on establishments offering nude entertainment, and, it appears that Diva's gave up the right to challenge the constitutionality of Bangor Code Section 228-14 when it executed the settlement agreement. In any event, Diva's conceded at argument that it could not challenge the constitutionality of Chapter 228 in this forum.

express no opinion on whether Diva's can ultimately prove her claim.

**CONCLUSION**

The district court's order of dismissal of Appellant Diva's, Inc. and Appellant Cormier-Young's claims for (1) breach of contract, (2) conspiracy to deprive under 42 U.S.C. § 1985(3), (3) tortious interference with contractual relations, and (4) intentional infliction of emotional distress is **AFFIRMED.** The district court's order dismissing all claims against the Mayor and the City Council members in their individual capacities and the dismissal of Appellant Cormier-Youngs as a plaintiff in the Section 1983 claims is **AFFIRMED.** The district court's order of dismissal of Appellants' challenge to the facial constitutionality of Bangor Code Section 61-17 is **AFFIRMED.** The district court's order of dismissal of Appellant Diva's claim that Appellees violated Section 1983 by depriving it of its Fourteenth Amendment right to due process is **AFFIRMED.** The district court's order of dismissal of Appellant Diva's claim that Appellees violated Section 1983 by depriving it of its First Amendment right to free speech under color of state law is **REVERSED** and **REMANDED** to determine whether Appellant Diva's can show that the City Council members denied the special amusement permit with the intent to curtail Diva's First Amendment right to free speech. And, as noted above, although we do not express any opinion on the viability of Diva's claim, the potential damages, if any, are limited to the three-week period

-27-

between the denial of the permit by the City Council, and the reversal of that denial by the Bangor Board of Appeals.