Will QUARTERMAN and State Street Entertainment, Plaintiffs

v.

CITY OF SPRINGFIELD and Peter Sygnator, Defendants.

Civil Action No. 07–30185–MAP.

United States District Court, D. Massachusetts.

Sept. 28, 2009.

Harold I. Resnic, Springfield, MA, for Plaintiffs.

John T. Liebel, Michael E. Mulcahy, Springfield, MA, for Defendants.

*MEMORANDUM AND ORDER RE-GARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

PONSOR, District Judge.

## I. *INTRODUCTION*

Plaintiffs Will Quarterman and State Street Entertainment Corp. (SSE), a company owned by Quarterman, have filed suit against Defendants City of Springfield (City) and Peter Sygnator claiming that their denial of Plaintiffs' liquor license transfer request was an act of racial discrimination. Defendants have moved for summary judgment on all counts of the complaint. (Dkt. No. 19.)

Defendants' motion will be allowed in part. With respect to Plaintiffs' federal claims, the court finds that Defendant Sygnator is entitled to judgment as a matter of law on all claims and Defendant City is entitled to judgment as a matter of law on the substantive and procedural due process claims, including Count VIII in its entirety.[1] With respect to Plaintiffs' claims under Massachusetts law, the court finds that Defendants are entitled to judgment as a matter of law on all claims by Plaintiff SSE and on Plaintiff Quarterman's claims under Count V. This ruling leaves for trial Plaintiffs' federal claims against Defendant City (Counts IV and VII) and Plaintiff Quarterman's state law claims against both Defendants in Counts I and III.[2]

Thus far, Plaintiffs' original eight counts have been adjudicated as follows:

I.  Mass. Gen. Laws ch. 272, § 98. Defendants' motion for summary judgment allowed as to Plaintiff SSE, denied as to Plaintiff Quarterman.

II. Dismissed by agreement of the parties.

III. Mass. Gen. Laws ch. 151B. Defendants' motion for summary judgment allowed as to Plaintiff SSE, denied as to Plaintiff Quarterman.

---

1. Plaintiffs have waived opposition to Defendants' Motion for Summary Judgment with respect to Count VIII.

2. Counts II and VI have been dismissed by agreement of the parties.

IV. 42 U.S.C. § 1983. Defendants' motion for summary judgment allowed as to Defendant Sygnator with respect to all claims, allowed as to both Defendants with respect to Plaintiffs' due process claims, denied as to Defendant City with respect to Plaintiff SSE's equal protection claims.

V. Mass. Gen. Laws ch. 12, § 11I. Defendants' motion for summary judgment allowed.

VI. Dismissed by agreement of the parties.

VII. 42 U.S.C. § 1981. Defendants' motion for summary judgment allowed as to Defendant Sygnator with respect to all claims, allowed as to both Defendants with respect to Plaintiffs' due process claims, denied as to Defendant City with respect to Plaintiff SSE's equal protection claims.

VIII. Defendants' motion for summary judgment allowed with agreement of the parties.

## II. FACTS

The material facts are summarized below in the light most favorable to Plaintiffs.

### A. Background

Plaintiff Quarterman, who described himself in the complaint as "Mulato [sic]/Bi-racial" (Dkt. No. 1, Compl. ¶ 5), is the President, Treasurer, Director, and Clerk of SSE, a Massachusetts corporation. SSE, doing business as Logan's Lounge, held a liquor license issued by the City that allowed SSE to serve alcohol at 87 State Street in Springfield, Massachusetts. Logan's Lounge catered to a predominantly Hispanic and African–American clientele.

At approximately 3:15 a.m. on April 16, 2004, a shooting occurred inside Logan's Lounge (which was required by law to close at 2:00 a.m.), and one guest sustained gunshot wounds. Shortly thereafter, Logan's Lounge was evicted from its State Street premises by the lessor and ceased doing business. On May 7, 2004, the Springfield Police Department sent an incident report to the Springfield Board of License Commissioners (the Board) and requested that the Board charge Logan's Lounge with license violations associated with its conduct in relation to the shooting.

On November 10, 2004, Plaintiffs appeared before the Board with counsel in connection with the violation proceeding and stipulated to two license violations arising out of the April 16, 2004 shooting incident. The Board did not suspend SSE's liquor license.

### B. Liquor License Transfer Application and Alleged Racial Animus

In August or September 2004, while the violation proceeding was pending, Plaintiffs applied to the Board to transfer their liquor license from 87 State Street to 1592–1594 Main Street in downtown Springfield and requested a hearing regarding the application.

On March 10, 2005, the Board held its hearing on Plaintiffs' transfer request. Prior to the hearing, Peter Sygnator, a member of the Board, and Springfield Mayor Charles Ryan met with two private investigators. The record is silent as to who hired the investigators.

The private investigators informed Sygnator and Mayor Ryan that an individual named Christopher Kolodziey had a $25,000 undisclosed interest in SSE and its liquor license. An undisclosed interest in a license-holding enterprise violates Massachusetts law. See MASS. GEN. LAWS ch.

138, § 15A ("No stock in a corporation holding a license to sell alcoholic beverages shall be transferred, pledged, or issued without first obtaining the permission of the local licensing authorities and the commission.").

The investigators also informed Sygnator and Mayor Ryan that SSE had not filed appropriate tax returns and that SSE was "posted" with the state Alcoholic Beverage Control Commission (ABCC), i.e., SSE was delinquent in paying its liquor distributors and could only purchase alcohol on a cash basis. The information obtained at this meeting led to an investigation into SSE by the City of Springfield's Law Department.

In the weeks leading up to the March 2005 transfer hearing, formal and informal meetings between Sygnator and Quarterman took place. During these meetings, Plaintiff Quarterman alleges that Defendant Sygnator made the following remarks evincing racially discriminatory animus. Sygnator suggested that Quarterman could help make his patrons more safe by refusing to play "hip-hop" music. (Dkt. No. 24, Ex. 4, Pls.' Aff. ¶ 8.) Sygnator cited Club Miami and the Cornerstone Lounge, two downtown Springfield establishments that played hip-hop music and catered to a Latino and African–American clientele, as locations that were plagued with problems. *Id.* ¶¶ 9–11. Sygnator later repeated that he did not want Quarterman's proposed new establishment to play hip-hop music. *Id.* ¶ 12. On one occasion Sygnator stated that he did not want another Cornerstone Lounge, and on another occasion he stated that he did not want another Club Miami. *Id.* ¶¶ 13 and 14.

Sygnator does not deny having made the alleged statements but has stated that he does not recall making them.

On March 2, 2005, in response to Sygnator's remarks, Quarterman filed a complaint with the Massachusetts Commission Against Discrimination (MCAD). Quarterman filed the complaint on his own behalf and not on behalf of SSE. The complaint alleged racial discrimination and retaliation in violation of Mass. Gen. Laws ch. 151B (2009) and Mass. Gen. Laws ch. 272, § 98 (2009) and named as respondents Sygnator, Mayor Ryan, and the City. MCAD ultimately issued a finding of probable cause that Sygnator and the City may have discriminated against Plaintiff Quarterman.

C.  *The Violation Hearing and Alleged Disparate Treatment Arising Therefrom*

On March 10, 2005, Defendants held a hearing to address SSE's tax and disclosure violations. By a vote of four to one, Plaintiffs were assessed two violations: one for falsely affirming under oath that SSE had complied with all tax laws and another for a failure to disclose all parties with a direct interest in SSE's liquor license. As a penalty, SSE's liquor license was indefinitely suspended, to be reinstated only upon ABCC's approval of Mr. Kolodziey's interest in SSE. (Dkt. No. 21, Ex. G, ABCC Decision.)

Plaintiffs contend that the Board did not consistently issue violations to all license holders who failed to disclose nonpayment of taxes on their license renewal requests. Plaintiffs point to three white-owned businesses that were not assessed violations for the same conduct.

Plaintiffs further contend that the Board did not consistently issue violations to all license holders who failed to disclose all parties with an interest in the licensee. Plaintiffs point to a white-owned business, which the Board found to have committed an identical failure to disclose but which was not issued a violation. Instead the Board offered the offending licensee an

opportunity to cure the non-disclosure with additional filings.

### D. *The Transfer Hearing and Alleged Disparate Treatment Arising Therefrom*

Immediately following the violation hearing, Defendants held a three-hour hearing to consider Plaintiffs' transfer request. During the transfer hearing, multiple parties voiced support for and against the transfer. Plaintiffs also submitted a letter from Benjamin Swan, a State Representative, supporting the transfer. In response to the submission, Sygnator asked Quarterman, "are you finished, or do you have another letter from anyone else, like the Urban League or NAACP?" (Dkt. No. 24, Ex. 4, Pls.' Aff. ¶ 15.) Representative Swan is African American.

The Board denied the requested transfer by a vote of three to two and issued written findings in which it cited the following factors as contributing to the denial: the prior conduct and violations of the licensee, the after-hours violence at the licensee's prior establishment, the opinions of the inhabitants of the neighborhood, the opposition of the Business Planning District, the recommendation of the Planning Board, the impact of increased traffic and noise, the size and nature of the operation, and the number of existing establishments nearby. Plaintiffs unsuccessfully appealed to the ABCC but did not seek further review.

Plaintiffs contend that many of the factors cited in the Board's findings were pretextual. Plaintiffs point out that, shortly after the denial of Plaintiffs' transfer request, the Alumni Club applied for, and was granted, a liquor license transfer to a nearby location. The Alumni Club has a history of license violations, including an incident of violence in which a bouncer broke a patron's teeth. The owner of the Alumni Club is white.

In addition, Plaintiffs assert that a transfer applicant's "posted" status with the ABCC had never previously been considered to evaluate the merits of a liquor license transfer request. Mayor Ryan confirmed that the Board does not keep information pertaining to an applicant's posted status, and Board members Juan Rivera, Melvin McLaurin, and Sygnator himself all conceded that an applicant's posted status had never been used previously in considering the merits of a liquor license transfer application.

Plaintiffs allege that the ABCC has a policy not to divulge posting status to Board members and that Sygnator was aware that an applicant's posted status was not information the Board was usually able or allowed to obtain. E-mails also indicate that Sygnator nonetheless sought out and obtained the information from various undisclosed liquor distributors in Springfield.

After speaking with the two private investigators, Sygnator e-mailed the ABCC in order to verify that SSE was in fact posted. He was informed that the ABCC was unsure if it could legally divulge this information. In an e-mail response addressed to Board members, Sygnator stated "[w]e tried the front door ... let's try the back," and indicated that he had spoken with a local distributor whom he called a "secret contact" and who told him that SSE was posted with at least six distributors. (Dkt. No. 24, Ex. 7, Emails to and from Sygnator, at 2.)

Finally, Plaintiffs assert that it was not customary for the Board to request a liquor license transfer applicant's tax information. Both Sygnator and Mayor Ryan concede that the Board does not normally investigate this issue, and Sygnator acknowledges that such information has not

been used previously in considering a liquor license application.

## III. *DISCUSSION*

Defendants seek judgment under Fed.R. Civ. P. 56 on all counts of the complaint. Besides asserting that the above-described conduct does not constitute a violation of any law, Defendants assert that Plaintiff Quarterman, as a mere shareholder in the entity whose license transfer request was denied, lacks standing to pursue this claim and that Defendant Sygnator is entitled to immunity because he acted within the scope of official duties and/or because his function on the Board is quasi-judicial in nature. With respect to the claims under state law, Defendants also assert that Plaintiff SSE failed to exhaust its administrative remedies. The court addresses the issue of Quarterman's standing as a threshold matter before turning to the substance of Defendants' other arguments.

### A. *Standing*

■ A shareholder, even a sole shareholder, does not generally have standing to sue to redress wrongs inflicted on a corporation in which he holds an interest. *See Pagan v. Calderon*, 448 F.3d 16, 28 (1st Cir.2006) (shareholders lack standing), and *Diva's Inc. v. City of Bangor*, 411 F.3d 30, 42 (1st Cir.2005) (sole shareholder of corporation suing under 42 U.S.C. § 1983 lacks standing). However, a shareholder does have standing to the extent that he alleges direct, personal, and non-derivative injuries that are separate and distinct from the injury to the corporation. *Pagan*, 448 F.3d at 29. Quarterman was the only possible target of racial animus in this case, and he has alleged unique harms

arising from this status. These allegations are direct, personal, and non-derivative.

■ As a matter of law, a corporation cannot be a target of racial animus. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (holding that a corporation "has no racial identity and cannot be the direct target of ... discrimination"). A target of racial animus may suffer harms separate and distinct from a collateral victim of such animus. As the sole target of the alleged discrimination, Quarterman suffered unique harms that his corporation did not. As a plaintiff, Quarterman has adequately pled these unique harms. He has alleged that the racially motivated denial of SSE's transfer request caused him "severe mental anguish," "humiliation," and a "loss of enjoyment of life." (Dkt. No. 1, Compl. ¶¶ 39, 45, 54, and 60.) These claims arise directly from his status as a target of discrimination. These claims could not be alleged by SSE; they are not direct consequences of SSE's injury. The court therefore finds that Plaintiff Quarterman has standing to seek redress for his alleged injuries.[3]

### B. *Summary Judgment*

To grant a motion for summary judgment pursuant to Fed. R. Civ. P. 56(c), the court must determine that, with the facts viewed in the light most favorable to the non-moving party (here, Plaintiff), *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990), there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law, *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.1995). With respect to Plaintiffs' federal claims (Counts IV and VII), the court finds that both Defendants

---

**3.** Moreover, the court notes that it would defy the purpose of civil-rights enforcement to deny standing to the sole target of allegedly discriminatory conduct merely because the financial consequences of the discrimination were borne in part by a corporate co-plaintiff.

are entitled to judgment as a matter of law on the substantive due process theory, and Defendant Sygnator is entitled to judgment on both counts in their entirety. With respect to the claims under Massachusetts law (Counts I, III, and V), the court finds that Defendants are entitled to judgment as a matter of law on all Plaintiff SSE's claims and on Plaintiff Quarterman's claims under Count V.

### 1. *Counts IV and VII: Federal Claims*

Plaintiffs contend that Defendants, motivated by racial animus, deprived them of their constitutional rights to substantive due process and equal protection under the law and that each of these deprivations violated both 42 U.S.C. § 1981 and 42 U.S.C. § 1983. Defendants deny violating Plaintiffs' rights and/or assert that Defendants are immune from suits for damages arising under the cited statutes.[4]

#### a. *Substantive Due Process*

No claim for violation of substantive due process will lie here. The First Circuit has held, "with a regularity bordering on the monotonous" as follows:

> "[S]ubstantive due process doctrine may not, in the ordinary course, be invoked to challenge discretionary permitting or licensing determinations of state or local decision makers, whether those decisions are right or wrong. While ... the door [has been left] slightly ajar for ... truly horrendous situations, any permit or license denial, no matter how unattractive, that falls short of being truly horrendous is unlikely to qualify as conscience-shocking."

*Pagan v. Calderon*, 448 F.3d 16, 33 (1st Cir.2006) (internal citations omitted). The challenged conduct in this case involves a discretionary licensing determination and hence is not subject to due process challenge absent allegations of "truly horrendous" behavior.

■ Whether behavior is truly horrendous is often an issue of fact for a jury, but the court finds on this record that no reasonable jury could find the alleged acts to be sufficiently egregious. The First Circuit has found that conduct significantly more offensive than the conduct alleged by Plaintiffs does not rise to the level of a substantive due process violation. *See, e.g., Cruz–Erazo v. Rivera–Montanez*, 212 F.3d 617, 622–23 (1st Cir.2000) (finding that months of harassment by police officers did not "shock the conscience"); *Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir.1991) (concluding that threats by the police to kill plaintiff did not "shock the conscience"). Sygnator is alleged to have made several inappropriate and racially discriminatory comments. As reprehensible as these comments may have been (assuming they were made), they do not enhance the record sufficiently to support a substantive due process claim. Because the alleged conduct is insufficiently egregious, Defendants are entitled to partial summary judgment on Counts IV and VII.

#### b. *Equal Protection*

■ In contrast to the substantive due process claim, the claim for denial of equal protection is well supported on the record as it stands. To support an equal protection claim, a plaintiff must show that: (1) he was treated differently than similarly situated persons and (2) the differential treatment was the result of a gross abuse of power, invidious discrimination, or some

---

4. Although Plaintiffs initially claimed that Defendants deprived them of procedural due process rights in Count VIII of their complaint (Dkt. No. 1, Compl. at ¶¶ 44, 53, 56), they have waived any such claim in their brief. (Dkt. No. 23, Pls.' Opp'n to Defs.' Mot for Summ. J., at 10.)

fundamental procedural unfairness. *Pagan,* at 34. Under the *Pagan* test, Plaintiffs must show that they experienced (1) differential treatment arising from (2) invidious racial discrimination. On the record before the court, a reasonable jury could conclude that Plaintiffs have made the requisite showing.

■ To show differential treatment, Plaintiffs have produced evidence indicating that Defendants were more harsh in judging and punishing alleged violations of licensing-disclosure rules by Plaintiff SSE than by similarly situated white-owned licensees. Plaintiffs have also produced evidence that suggests Defendants scrutinized SSE more strictly than they scrutinized white-owned businesses applying for a liquor license transfer. These allegations are sufficient to suggest disparate treatment.

To show invidious discrimination, Plaintiffs have produced various e-mails and testified as to various statements by Sygnator in which he implies an association between criminality and "hip hop" music and denigrates local clubs catering to African–American and Hispanic clienteles. A jury may interpret this as evidence of racial animus and conclude that a claim of invidious racial discrimination has been made out.

Because Plaintiffs have produced evidence that Plaintiff SSE was subjected to disparate treatment motivated by racial animus directed at its shareholder, Plaintiff Quarterman, summary judgment is precluded on Plaintiffs' equal protection theory under 42 U.S.C. §§ 1981 and 1983 as set forth in Counts IV and VII.

### c. *Defendants' Immunity*

Defendants argue that they are entitled to qualified and/or absolute immunity against suits for damages under 42 U.S.C. §§ 1981 and 1983. The court finds that

Sygnator is entitled to absolute immunity in his individual capacity because his function on the Board was adjudicatory in nature. As to claims against Sygnator in his official capacity, the court notes that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Social Services of New York,* 436 U.S. 658, 690 n.55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that local governments may be sued under 42 U.S.C. § 1983). The court therefore treats the official-capacity claim as a claim against the City of Springfield and finds that the City of Springfield is not entitled to immunity.

### i. *Defendant Sygnator's Immunity*

Common law has traditionally granted absolute immunity to judges sued for damages resulting from action they take in the course of their official duties. This privilege has been extended to certain other officials who "perform functions closely associated with the judicial process." *Cleavinger v. Saxner,* 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985).

■ Whether an official's actions are adjudicatory in nature is determined under a "functional approach" that looks to "the nature of the responsibilities of the individual official." *Id.* at 201, 106 S.Ct. 496. In *Diva's Inc. v. City of Bangor,* 411 F.3d 30 (1st Cir.2005) (involving a local government's denial of an entertainment license), the First Circuit articulated a three-part test for determining whether an official's role is adjudicatory in nature. In order to enjoy the privilege of absolute immunity, (1) the official must adjudicate disputes on the basis of facts, law, and the merits; (2) the disputes must be sufficiently controversial to subject the official to potential lawsuits arising from his decisions; and (3) the official must adjudicate disputes

against a backdrop of protections of the complaining party's rights. *Diva's Inc.,* 411 F.3d at 41.

■ Applying the *Diva's* test, the court concludes that Sygnator performed an adjudicatory function when he served as a Board member. On the first prong, adjudication, the *Diva's* court found that when a city council "held a hearing, heard testimony, asked questions, discussed the matter, made their decision, and then provided a written explanation of their reasoning," the council had adjudicated a dispute on the merits. The Board engaged in the same process and likewise produced a written explanation of the denial. The court therefore finds as a matter of law that the Board adjudicated a dispute on the merits. On the second prong, it is clear—given the current lawsuit—that the dispute was sufficiently controversial to subject Sygnator to the risk of litigation. On the third prong, the court finds that there were sufficient procedural safeguards. In particular, the court notes that unsuccessful applicants before the Board had the right to appeal its decision to the Massachusetts ABCC, as Plaintiff Quarterman in fact did. (Dkt. No. 21, Ex. H, ABCC Decision.)[5] Accordingly, the court finds that Sygnator was performing an adjudicatory function when he engaged in the conduct to which Plaintiffs object and that he is therefore entitled to absolute immunity.[6]

### ii. *Defendant City's Immunity*

■ A claim against a plaintiff in his official capacity is effectively a claim against the entity of which the official is an agent. *See Monell,* 436 U.S. at 690 n.55, 98 S.Ct. 2018. Plaintiffs' federal claims against Sygnator in his official capacity are therefore treated as claims against the City of Springfield, and the court does not separately address any official-capacity immunity.

■ The City of Springfield is not entitled to immunity. When a local government entity is sued under 42 U.S.C. § 1983, the entity is entitled to neither absolute immunity, *Monell,* at 701, 98 S.Ct. 2018, nor qualified immunity, *Owen v. City of Independence,* 445 U.S. 622, 638, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Even if the offending official is entitled to immunity, the entity is not. As a municipal government, the City of Springfield has no immunity against suits for damages brought under 42 U.S.C. § 1981 or 1983. Even though Sygnator enjoys absolute immunity, the City remains potentially liable.

■ A municipality is responsible only for acts that represent its policy or custom. *Monell,* 436 U.S. at 694, 98 S.Ct. 2018. However, even a single decision can constitute a policy or custom for *Monell* purposes. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). And even a single decision of limited scope and no precedential effect may constitute a *Monell* policy or custom if the official making the decision "possesses final authority to establish municipal policy with respect to the action ordered." *Id. See, e.g., Small v. Inhabitants of City of Belfast,* 796 F.2d 544 (1st Cir.1986) (holding that liability could attach to defendant city by virtue of unconstitutional action by city manager

---

**5.** Additionally, Plaintiffs could have appealed the ABCC's decision via a petition for a writ of *certiorari* to the Supreme Judicial Court. Mass. Gen. Laws ch. 249, § 4; *Ballarin, Inc. v. Licensing Board of Boston,* 49 Mass.App.Ct. 506, 730 N.E.2d 904, 908 (2000).

**6.** Having found that Defendant Sygnator is entitled to absolute immunity, the court does not reach the issue of Sygnator's entitlement to qualified immunity.

with final authority to revoke plaintiff's appointment as a special police officer). The Board has final municipal authority over liquor license transfer applications. The Board's actions therefore constitute a municipal policy or custom that may expose the Board to liability. For that reason, the court cannot find, as a matter of law, that the City is not liable for the Board's denial of Plaintiffs' request for a liquor license transfer.

### 2. *Counts I, III, and V: State Law Claims*

Plaintiffs contend that Defendants (1) discriminated against them on the basis of race in a place of public accommodation, in violation of Mass. Gen. Laws ch. 272, § 98; (2) discriminated against them on the basis of race and retaliated against them for filing a complaint with the MCAD, which actions violated Mass. Gen. Laws ch. 151B; and (3) threatened, intimidated and coerced them in violation of Mass. Gen. Laws ch. 12, § 11I (2009).

In moving for summary judgment on these counts, Defendants contend that both Plaintiffs failed to exhaust their administrative remedies as required by Mass. Gen. Laws ch. 151B, § 5. The court concludes that (1) Plaintiff SSE, by failing to file a complaint with MCAD, failed to exhaust its remedies on all three state statutory counts, and (2) both Plaintiffs failed to exhaust their administrative remedies with respect to the claim under Mass. Gen. Laws ch. 12, § 11I.

#### a. *Exhaustion*

Massachusetts law requires that all of Plaintiffs' state-law discrimination claims be brought before the MCAD before a lawsuit may be filed. *See Mouradian v. Gen. Elec. Co.*, 23 Mass.App.Ct. 538, 503 N.E.2d 1318, 1321 (1987) (regarding claims under Mass. Gen. Laws. ch. 12, § 11I); *Chaudhary v. Taco Bell Corp.*, No.

952093, 1995 WL 1312539, at *2–3 (Mass. Super. Dec. 11, 1995) (regarding claims under Mass. Gen. Laws ch. 272, § 98). Plaintiff Quarterman satisfied the exhaustion requirement by filing a timely complaint with MCAD concerning his claims under Mass. Gen. Laws. chs. 151B, § 4 and 272, § 98. (Dkt. No. 24, Ex. 1, Discrimination Compl.) However, his MCAD complaint makes no mention of any claim under Mass. Gen. Laws ch. 12, § 11I. *Id.* Thus, Quarterman satisfied the *Mouradian* exhaustion requirement with respect to Counts I and III but not with respect to Count V. Count V is therefore dismissed as to Quarterman.

SSE did not bring any complaints to the MCAD and therefore has not satisfied the *Mouradian* exhaustion requirement. Plaintiffs contend that, although SSE is not mentioned by name on the face of Quarterman's complaint, this mistake should not be fatal because Defendants were sufficiently put on notice in Quarterman's MCAD complaint that SSE was an aggrieved party.

This argument is unpersuasive. Some courts have found that a party not previously named as a respondent in a claim before the MCAD may nonetheless be named in a subsequent civil suit if the conduct of the party was put at issue in the original MCAD complaint. *See, e.g., Chatman v. Gentle Dental Center of Waltham,* 973 F.Supp. 228, 235 (D.Mass.1997). However, Plaintiff SSE did not fail to name a respondent but failed to bring a claim with MCAD in the first place. The court is unaware of any case in which a claimant who failed to bring any claim at all before the MCAD was nonetheless deemed to have exhausted its remedies.

Moreover, the court sees no reason to extend the leniency in *Chatman* to the facts at issue. The failure to name a re-

spondent may be excused, in some instances, because that potential party was put on notice by the relation of its conduct to the conduct of the party actually named in an MCAD complaint. Defendants would not have been similarly put on notice. They could not have known that a corporation (an entity lacking, in a legal sense, a racial identity) would eventually sue for racial discrimination under state law.

In conclusion, the court will enter summary judgment on Count V as to both Plaintiffs, and on Counts I and III as to Plaintiff SSE.

### b. *Immunity*

Neither Defendant is entitled to absolute or qualified immunity on the remaining state law claims.

With respect to Defendant City, Defendants have offered no authority to suggest that Massachusetts law recognizes either absolute or qualified immunity for a government entity. Defendant City is therefore not entitled to immunity.

■ With respect to Defendant Sygnator, Massachusetts law recognizes qualified or "conditional" immunity for government officials named in suits for damages arising from the individual's official conduct. Such immunity does not depend on the performance of a judicial or quasi-judicial function. However, such immunity is available to individuals other than judges and judicial officers only to the extent that the individual acts in good faith, "without malice and without corruption." *Gildea v. Ellershaw*, 363 Mass. 800, 298 N.E.2d 847, 858–60 (1973). An official who does not act in good faith does not enjoy absolute immunity. *Id.* In general, good faith and malice are issues of fact triable to a jury, and the record of this case is sufficient to raise questions as to Sygnator's good faith.

Claims that he was using his influence as a Board member to reduce the number of entertainment establishments catering to a minority clientele are particularly salient in this respect and preclude judgment as a matter of law that he enjoys immunity against the state law claims.[7]

### IV. *CONCLUSION*

For the foregoing reasons, Defendants' Motion for Summary Judgment (Dkt. No. 19) is hereby ALLOWED in part. Summary judgment is allowed (1) with respect to Plaintiff SSE's claims under Counts I, III, and V. Summary judgment is also allowed (2) as to Defendant Sygnator on Counts IV and VII, (3) on Count V in its entirety, (4) as to Defendant City on Counts IV and VII to the extent that such counts rely on a substantive due process theory, and (5) on Count VIII in its entirety.

Plaintiffs' equal protection claims under 42 U.S.C. § 1983 (Count IV) and 42 U.S.C. § 1981 (Count VII) will proceed to trial against Defendant City of Springfield. Plaintiff Quarterman's state law claims under Mass. Gen. Laws ch. 272, § 98 (Count I) and Mass. Gen. Laws. ch. 151B (Count III) will proceed to trial against both Defendants.

Based on the reduced number of counts proceeding to trial, the court orders counsel to appear for another final pre-trial conference on October 21, 2009, at 3:30 p.m. Supplemental final pre-trial memoranda should be filed, if necessary, by October 19, 2009. The court will be particularly interested in whether these summary judgment rulings will affect the amount of time needed for trial.

---

7. Currently, Massachusetts does not recognizes absolute immunity for non-judicial officers. *See Gildea*, 298 N.E.2d at 858; Richard

W. Bishop, *Massachusetts Practice Series* § 17.11 (2009).

Trial itself will commence on November 30, 2009 at 10 a.m. Counsel will appear that day at 9 a.m. for a conference prior to commencement of jury selection. Proposed jury instructions, proposed *voir dire* questions, and motions in *limine* will be filed no later than November 23, 2009.

It is So Ordered.